JOAN ZIMMERER ET AL., APPELLANTS, V. THE PRUDENTIAL
INSURANCE COMPANY OF AMERICA ET AL., APPELLEES.

34 N. W. 2d 750

Filed November 12, 1948. No. 32426.

*Thomas & Cattle,* for appellants.

*Joseph H. McGroarty, Harold F. Peyton,* and *Paul H. Bek,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

Plaintiffs in this action seek a decree that a foreclosure proceeding, resulting in the sale of land, is void. The cause is based upon the contention that the trial judge was disqualified by statute because of a claimed relationship by affinity with one of the defendants. The trial court denied the relief prayed, dismissed plaintiffs' action, and quieted the title of the defendants Prudential Insurance Company and Luebbe. Plaintiffs appeal. We affirm the judgment of the trial court.

The action involves 280 acres of land in Seward County. It formerly was owned by Philomena Zimmerer. She mortgaged it to the Prudential Insurance Company. On January 27, 1933, the insurance company began foreclosure proceedings. Philomena Zimmerer died and the action was revived in the name of John F. Zimmerer as her sole heir at law. During the early proceedings Robert T. Cattle was joined as a defendant and appeared in the action on a showing that he held title by an unrecorded deed from Philomena Zimmerer. The cause

proceeded to decree, in which it was found that Robert T. Cattle was the owner of the land and entitled to the equity of redemption. It appears from evidence in this action that the deed was in fact a mortgage, and that the indebtedness was compromised and the deed delivered to John F. Zimmerer.

Pursuant to the decree the land was sold. Before confirmation a moratorium was granted and later extended to March 1, 1937. May 25, 1936, the insurance company made application to terminate the moratorium. On the same day hearing was had; all matters in dispute were compromised and settled; the moratorium was terminated; and, at the request of the defendants, confirmation of the sale was made, and sheriff's deed ordered and issued.

March 12, 1937, the insurance company conveyed 120 acres of the land to the defendant Wilhelm Luebbe.

During the foreclosure proceedings John F. Zimmerer conveyed an undivided one-half interest in the land to Helena Zimmerer, now Albers, one of the plaintiffs herein. John F. Zimmerer died December 1, 1943, leaving as his sole and only heir at law Joan Zimmerer, the other plaintiff herein.

On January 13, 1937, the insurance company brought an action to quiet the title of this land in it. Robert T. Cattle was a party defendant in that action. A decree for the insurance company was entered.

It does not appear that, in any of these proceedings, the trial judge was called upon to decide any disputed question of fact or law.

In this action Joan Zimmerer and Helena Albers, claiming to be the owners of the land subject to the mortgage, seek to have all the proceedings declared void, and pray that the amount due on the mortgage be determined and offer to tender payment into court, and that title be quieted in them. The defendants are the insurance company, Wilhelm Luebbe and wife, and Robert T. Cattle.

All the proceedings referred to herein were had before, and the orders and decrees were entered and signed by Harry D. Landis, a judge of the district court for Seward County. In 1907, Judge Landis married Alice M. Cattle, a sister of Robert T. Cattle. To that union six children were born, and all are now living. Mrs. Landis died October 2, 1932, before any of the proceedings involved here were had.

Plaintiffs allege that Judge Landis, during the entire proceedings, was related to Robert T. Cattle by affinity within the fourth degree, being a brother-in-law, hence disqualified by the provisions of section 24-315, R. S. 1943, and thus all proceedings are void. Defendant insurance company joined issue by alleging that the relationship had terminated upon the death of Mrs. Landis, and denying that there existed any disqualification. The defendants Luebbe joined issue by a general denial. Other defenses and issues were presented.

Necessarily the first question presented for determination is whether or not Judge Landis was a disqualified judge within the terms of the statute.

The provision of the statute, so far as important here, is: "A judge or justice is disqualified from acting as such in the county, district or Supreme Court, except by mutual consent of the parties, in any case * * * where he is related to either party by consanguinity or affinity within the fourth degree, * * *." § 24-315, R. S. 1943.

Affinity is the relationship which arises as a result of the marriage contract between one spouse and the blood relations of the other, in contradistinction from consanguinity or relationship by blood.

Clearly, when Judge Landis married Miss Cattle, the relationship of affinity arose between him and Robert T. Cattle, her brother. It would seem that when that marriage was dissolved by the death of Mrs. Landis, the relationship of affinity with Robert T. Cattle likewise was dissolved, for the relationship by affinity rests upon a subsisting marriage, not a dissolved one.

However, we are confronted with statements, found in the texts, that it has generally been held that the disqualification of a judge or juror arising by affinity is removed by the dissolution of the marriage through which the relationship arose, in the absence of surviving issue of the marriage. See 2 C. J., Affinity, p. 379; 33 C. J., Judges, § 167, p. 1009; 48 C. J. S., Judges, § 88, p. 1076; 30 Am. Jur., Judges, § 69, p. 780; Annotation 117 A. L. R. 800, 801.

It would seem that as a matter of reason the birth of issue to the marriage, not being a condition to the creation of the relationship by affinity, would not operate to continue the affinity if issue were living after the marriage was dissolved.

We have searched the cases endeavoring to find the reason for the rule that death of a spouse dissolves the relationship by affinity where there are no surviving issue of the marriage, but that the relationship continues if there be surviving issue of the marriage.

Numerically the larger number of decisions following the rule that surviving issue continue the affinity relationship deal with the question of the disqualification of jurors. The rule has been applied to disqualification of judges in a few instances. Carman v. Newell, 1 Den. 25, where the rule was referred to and it was held that the justice was not disqualified, there being no evidence of surviving issue of the marriage; Paddock v. Wells, 2 Barb. Ch. 331, where a vice chancellor disqualified himself on the basis of relationship; Pegues v. Baker, 110 Ala. 251, 17 So. 943; Vannoy v. Givens, 23 N. J. Law 201; Spear v. Robinson, 29 Me. 531.

Whether the decisions deal with the disqualification of jurors or judges, where authorities are cited, they finally stem back to Coke upon Littleton, Butler & Hargrave's Notes, where it is said: "And it is to be knowne, that there is a principall cause of challenge to the array, and a challenge to the favour. Principall, in respect of partialitie. As first, if the sherife, or other

officers be of (a) kindred, or affinitie (1), to the plaintife or defendant, if the affinitie (2) continue (b)." 1 Coke upon Littleton, Of Rents, § 156. a. The note there is: "(2) Having issue living by the wife, though she is dead, is sufficient to continue the husband's affinity. Nor is it necessary that the issue should be inheritable to the land, where land is the subject of the action. Both of these positions I infer from the case of Mounson and West before cited from 1 Leon. 88.—Note 278.)"

It is noted that this quote is taken from a chapter dealing with the subject "Of Rents." It relates to "a challenge to the array" of jurors. In the preceding paragraph it is said that "* * * to challenge the array of the pannell is at once to challenge or except against all the persons so arrayed or impannelled, in respect of the partialitie or default of the sherife, coroner, or other officer that made the returne." So it would seem that the challenge there discussed goes not to the kindred or affinity of the juror but to the kindred or affinity of the "sherife, * * * or other officer" who made the return. The language of the quote clearly so indicates its scope.

Also in some of the decisions reference is made to "III. *Propter affectum*: And this is of two sorts, either working a principal challenge, or to the favour. And again a principall challenge is of two sorts, either by judgment of law without any act of his, or by judgment of law upon his owne act. And it is said that a principall challenge is, when there is expresse favour or expresse malice. 1. Without any act of his, as if the juror be (a) of blood or kindred to either partie, *consanguineus*, which is compounded *ex con & sanguine, quasi eodem sanguine natus*, as it were issued from the same blood; and this is a principal challenge, for that the law presumeth that one kinsman doth favour another before a stranger; (b) and how far remote soever he is of kindred, yet the challenge is good." 1 Coke upon Littleton, Of Rents, § 157. a.

This second quote goes to the "challenges to the polles"

which is stated in 156. b., and means a challenge "severally to the persons returned." The language above quoted is found under this third classification. It would seem that so far as this language is concerned, the challenge relates to consanguinity only.

However, the author goes further and states: "(e) Affinity or alliance by marriage is a principall challenge, and equivalent to consanguinity when it is between either of the parties, as if the plaintife or defendant marry the daughter or cousin of the juror, or the juror marry the daughter or cousin of the plaintife or defendant, and the same continues, or issue be (6) had. But if the son of the juror hath married the daughter of the plaintife, this is no principall challenge, but to the favour; because it is not betweene the parties. Much more may be said hereof; *sed summa sequor fastigia rerum*." 1 Coke upon Littleton, Of Rents, § 157. a. The note to this above quote is: "But the issue must be *living*." We are advised that the phrase "sed summa sequor fastigia rerum" literally means "but I seek after the topmost parts of things." See, also, 2 Cooley's Blackstone (3d ed.), Trial by Jury, p. 204 and following (Book III, chapter 23, pp. 358 to 363), where the same challenges are discussed. It is noted that Blackstone limits the challenge that a juror is of kin to either party to "within the ninth degree." (p. 363)

It may be pointed out here that the ancient case of Mounson and West (1 Leon. 88; 74 Eng. Rep. R. 82), cited by many of the courts and in the above note, related to a challenge to the array.

So it is that the rule as to jurors in our modern texts is stated: "It is a general rule that one related, within a prohibited degree, to a party in a case is disqualified to serve as a juror on such case and is subject to challenge by the adverse party. This applies to relationship by affinity as well as by consanguinity. The prescribed degree varies in the several jurisdictions. It has been said that relationship, either by consanguinity or af-

finity, to one of the parties to a suit, within the ninth degree, is, under the common law, a ground of principal challenge of a juror." 31 Am. Jur., Jury, § 134, p. 660. See, also, 35 C. J., Juries, § 331, p. 317; 50 C. J. S., Juries, § 218, p. 953.

It, therefore, appears that those courts which have followed the authorities here discussed have applied a common-law rule as to the disqualification of a juror because of relationship to a party in determining the disqualification of a judge.

Was a judge disqualified at common law because of relationship to a party?

The texts state: "The general rule at common law is that a judge is not disqualified by relationship to a party or to a person interested in the result of the litigation, although there are statements in some of the cases to the contrary. Under constitutional or statutory provisions, however, in practically all the states, a judge is disqualified to act in any cause wherein he may be related to one of the parties within certain specified degrees of consanguinity or affinity, which vary considerably in the different jurisdictions, or where the parties, or either of them, are connected with him by affinity or consanguinity, without specifying the degree." 30 Am. Jur., Judges, § 68, p. 779. See, also, 33 C. J., Judges, § 161, p. 1005; 48 C. J. S., Judges, § 84, p. 1070. The cited decisions support the texts.

In Inter Brookes and the Earl of Rivers, Hardres Reports, p. 503 (an ancient case), the judge and the plaintiff were brothers-in-law. It was held that the judge would be disqualified to determine the cause if he had an interest in the litigation (which did not appear), but that he was not disqualified because of the relationship "for favor shall not be presumed in a judge."

In Coke upon Littleton, it is stated: "* * * in law * * * judges or justices cannot bee challenged." 2 Coke upon Littleton, Of Releases, § 294. a. Blackstone states that a judge cannot take cognizance of an action brought

against himself. 2 Cooley's Blackstone (3d ed.), Pleadings in Suits at Law, p. 166 (Book III, chapter 20, p. 298). So far as our research discloses that is the only disqualification of a judge recognized at common law. But more important is this statement from Blackstone, found in his discussion of the subject of challenges to the polls: "Challenges to the polls, *in capita,* are exceptions to particular jurors; and seem to answer to the *recusatio judicis* in the civil and canon laws; by the constitutions of which a judge might be refused upon any suspicion of partiality. By the laws of England, also, in the times of Bracton and Fleta, a judge might be refused for good cause; but now the law is otherwise, and it is held that judges and justices cannot be challenged. (a) For the law will not suppose a possibility of bias or favour in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea. And should the fact at any time prove flagrantly such, as the delicacy of the law will not presume beforehand, there is no doubt but that such misbehaviour would draw down a heavy censure from those to whom the judge is accountable for his conduct." 2 Cooley's Blackstone (3d ed.), Trial by Jury, p. 206 (Book III, chapter 23, p. 361).

We are dealing here, then, with a statute fixing a legal disqualification for a judge which is in derogation of the common law.

Under these circumstances the rule of construction is: "Statutes are not to be understood as effecting any change in the common law beyond that which is clearly indicated." Nielsen v. Chicago, B. & Q. R. R. Co., 141 Neb. 584, 4 N. W. 2d 569.

This statute has in substance existed in Nebraska since territorial days. It appears that similar statutes have existed in most of the states of the Union for many years. The few cases where appellate courts have been called upon to apply the acts indicates the meticulous care of the judges in matters of this kind. In this case it appears

that all of the parties to the foreclosure action, and their attorneys, save the insurance company and its non-resident attorneys at the beginning of the action, knew that Mrs. Landis was a sister of Robert T. Cattle. No one questioned the judge's right to act in the cause. When the first controversial matter, that of setting aside the moratorium, arose, Judge Landis objected to hearing the matter, and entered the decree only after the parties stipulated in open court as to the facts and requested that he act. There is no indicated need of a statute going to the extent of the construction for which plaintiffs contend.

The question then comes—is it clearly indicated, by the provisions of section 24-315, R. S. 1943, here involved, that the Legislature intended to change the common-law rule so as to disqualify a judge whose deceased wife's brother was a party, there being living issue of the marriage at the time of the trial?

We do not think so. The Legislature did not extend the bar of affinity to the degree provided by the common-law rule as applied to jurors.

The plain meaning of the word "affinity" as used here implies a relationship that begins and ends with the beginning and ending of the marriage relation. The statement in Coke upon Littleton "if the affinitie continue" and the statement that "Affinity or alliance by marriage is a principall challenge, and equivalent to consanguinity when it is between either of the parties, * * * and the same continues" clearly indicate that the affinity may terminate. More important, the concluding phrase "or issue be had" (in 157. a., which does not appear in the text in 156. a., relating to a challenge to the array) indicates a disqualification of the juror arising after the affinity ends. Were it otherwise, the phrase would be surplusage.

But we need not rest our conclusion on the ancient writings. There is substantial authority for it within the decisions of the courts of the United States.

In Trout v. Drawhorn, 57 Ind. 570, a party's first wife was an aunt of the wife of the justice. Six children were born to the marriage, and all were living at the time of the trial. The wife died before the action began. It was claimed that a judgment rendered by the justice was a nullity. There the statute provided: "No justice shall have jurisdiction in any action * * * wherein * * * the justice be related by blood or marriage to either party." 2 R. S. Ind., 1876, § 10, p. 605. There was no claim of consanguinity. The court held that at the time of the action the justice was not related to the party either by blood or marriage; that there was at that time no marriage existing between the party and anyone related in any manner to the justice; that the relationship by affinity ceased with the dissolution of the marriage which created it; that the fact that the party had children, then living, by his first wife was of no importance; and that their existence did not continue the relationship which had existed between the justice and the party before the death of his first wife.

The distinction which we here are making is illustrated by an earlier decision of the Supreme Court of Indiana in Dearmond v. Dearmond, 10 Ind. 191. There a challenge to a juror for cause was made on the ground that plaintiff's first husband was a brother of the juror's wife, and that the juror's and the plaintiff's children by that husband were first cousins. The court held that the challenge should have been sustained, saying that had this plaintiff instituted a suit for any cause while her husband was living, the juror would have been incompetent and, as issue was left surviving by that husband, it would seem that the incompetency continued to exist.

The Supreme Court of Connecticut determined a similar contention in Winchester v. Hinsdale, 12 Conn. 87. There a party to the suit had married the aunt of the judge, but before the commencement of the suit she had died leaving issue living at the time of the trial. On appeal it was contended that the judge was disqualified

to try the cause and render judgment. The appellant urged that the affinity to the husband did not cease at the death of the wife, especially where there was issue living, and cited Mounson v. West, *supra,* and Coke upon Littleton, 156. a., n. 1. and 2., referred to hereinbefore. The appellee cited 3 Blackstone's Commentaries, p. 361, (2 Cooley's Blackstone, 3d ed., Trial by Jury, p. 206, hereinbefore quoted). The Supreme Court of Connecticut held that in England "no relationship existing between a judge and a party, is a disqualification"; that a judge was presumed to be impartial and uncorrupt; that by Connecticut law the relationship of uncle and nephew, by nature or marriage, disqualified a judge; that by marriage of his aunt to the party the judge became a nephew of the party by marriage; that the dissolution of the marriage by the death of the aunt dissolved the relationship which had been constituted by the marriage; that the circumstance that children of the marriage survived did not operate to continue the affinity; and that although the judge and the party were related to the surviving children in different degrees of consanguinity, they were not from that cause connected in any degree of affinity with each other.

Speaking of the Connecticut decision, the Supreme Court of Georgia said: "* * * we are much impressed with the sound sense and satisfactory reasoning of this decision. To multiply disabilities by a more than doubtful construction, when none are created by the words of the statute, we apprehend, would be as unwise as it is impolitic and harmful. The admirable sagacity of our British ancestors in extending to their judges the fullest confidence, and discouraging everything like distrust of their integrity and wisdom, has been amply vindicated by results. * * * This generous confidence has promoted, if not created, a pride of character and a pride of places, that has secured an incorruptible and efficient administration of justice and has afforded ample protection to every right of the subject and the crown. It has made

England, in this respect, a light to the world, and the admiration, if not the envy, of other nations." Patterson v. Collier, 75 Ga. 419, 58 Am. R. 472.

It appears that Georgia, while recognizing the distinction between the common-law rule as to judges and jurors, now applies the juror rule to judges. This seems to rest largely on the fact that in 1935 its Legislature passed an act which made the grounds of disqualification applicable alike to judges and jurors. Georgia Power Co. v. Watts, 184 Ga. 135, 190 S. E. 654, 110 A. L. R. 465; Georgia Power Co. v. Moody, 186 Ga. 343, 197 S. E. 844, 117 A. L. R. 798.

To hold that Judge Landis was disqualified under the statute would be to add a disqualification that is not there. We are neither inclined nor authorized so to do.

This conclusion makes it unnecessary to consider other assignments of error based on the foundation that the statute applied.

The judgment of the district court is affirmed.

AFFIRMED.