Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/14/2022 08:08 AM CDT

State of Nebraska, appellee, v.
Tanya L. Hofmann, appellant.

___ N.W.2d ___

Filed December 17, 2021.    No. S-21-104.

1. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.

2. ____: ____: ____. When a criminal defendant challenges the sufficiency of the evidence upon which a conviction is based, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

3. **Statutes: Legislature: Intent.** In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, it being a court's duty to discover, if possible, the Legislature's intent from the language of the statute itself.

4. ____: ____: ____. Components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of an act are consistent, harmonious, and sensible.

5. **Criminal Law: Statutes.** Penal statutes must be strictly construed and are considered in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.

6. ____: ____. A penal statute will not be applied to situations or parties not fairly or clearly within its provisions.

7. **Statutes: Words and Phrases.** The word "include," as used in a statute, connotes that the provided list of components is not exhaustive and that there are other items includable that are not specifically enumerated.

8. **Criminal Law: Weapons: Records.** Nothing in Neb. Rev. Stat. § 69-2409 (Reissue 2018), or any other provision of the statutory scheme pertaining to handguns, limits a background check as the sole means of obtaining the information of whether an applicant is disqualified from purchasing or possessing a handgun.

Appeal from the District Court for Scotts Bluff County: Andrea D. Miller, Judge. Affirmed.

Bell Island, of Island Law Office, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## INTRODUCTION

In an appeal from a conviction of attempted false information on a gun permit application, the defendant asserts there was insufficient evidence to support the conviction, because the alleged false information was not about the defendant's name, address, date of birth, or country of citizenship, which is the information that by statute the application "shall include."[1] The defendant was under a "complaint" for a felony in county court at the time of the application and asserts in the alternative that answering "no" to whether she was under an "indictment" or "information" in any court, with the application defining "information" as "a formal accusation of a crime by a prosecutor," was not false, because, by statute and case law, until there is a bindover from county court to district court after a finding of probable cause, felony charges are contained in a "complaint."

---

[1] Neb. Rev. Stat. § 69-2404 (Reissue 2018).

## BACKGROUND

Following a stipulated bench trial, Tanya L. Hofmann was convicted of attempted false information on a gun permit application, in violation of Neb. Rev. Stat. §§ 28-201(4)(e) (Cum. Supp. 2020) and 69-2408 (Reissue 2018). Hofmann was fined $400 and assessed costs of $137. Hofmann now appeals this conviction. We granted the State's petition to bypass the Nebraska Court of Appeals.

Hofmann's conviction stems from when she applied for a firearm purchase permit. Hofmann went to the Scotts Bluff County sheriff's office on January 8, 2020, to apply for a permit to purchase, lease, rent, or receive transfer of a firearm. After providing her biographical information (name, address, date of birth, Social Security number, height, weight, country of citizenship, et cetera) on the application, she answered a series of additional questions. The first question asked, "Are you under indictment or information in any court for a felony, or any other crime for which the judge could imprison you for more than one year? (An information is a formal accusation of a crime by a prosecutor. An indictment is from a grand jury.)" Hofmann circled "NO" on this question. Hofmann then presented her driver's license and prior firearm purchase certificate to the sheriff's office employee collecting her application material and paid the $5 fee for the background check.

For the purposes of the bench trial, the parties stipulated (1) that all events occurred in Scotts Bluff County, Nebraska; (2) that "Tanya Hofmann" in the present case is the same "Tanya Hofmann" who applied for a firearm permit on January 8, 2020, at the Scotts Bluff County sheriff's office and the same "Tanya Hofmann" who was charged in Clay County, Nebraska, in case No. CR 19-184; and (3) that "any intent necessary for an element pursuant to Neb. Rev. Stat. §28-201 is present."

In a deposition received as part of the stipulated trial, the sheriff's office employee who collected the application testified that Hofmann never asked her for assistance in reading the application or answering the questions. When people

ask questions regarding convictions of felonies, she generally would find out what their charge was and then ask the chief deputy or sheriff whether the charge was a felony or misdemeanor.

The deposition of a records clerk at the sheriff's office was also received as part of the stipulated trial. She testified that she received a call from Hofmann on the morning of January 9, 2020. Hofmann informed her she had filled out a firearm application the day before, but had been "up all night" concerned about her answer to the first question. The records clerk testified that Hofmann stated she did not have her glasses and could not see the question very well, but was concerned that she had answered the question incorrectly. Hofmann asked whether she could change her answer or otherwise withdraw her application. The records clerk told Hofmann that the application had already "gone downstairs," meaning a background check had already been done, but that she would let the chief deputy know and he could decide. The chief deputy, having received all of the application materials and aware of the records clerk's conversation with Hofmann, determined that Hofmann could not change or withdraw her application.

In accordance with its standard procedures, the sheriff's office used Hofmann's name and date of birth to run a background check. The background check revealed that in October 2019, Hofmann was charged by complaint in the county court for Clay County for possession of a controlled substance, a Class IV felony, among other misdemeanor and infraction offenses. The felony charge in the complaint in Clay County for possession of a controlled substance was bound over to district court on February 4, 2020, and the other charges were dismissed. An information was filed in district court on February 7, approximately 1 month after Hofmann filed her application.

Based on the initial background check, which showed a felony charge against Hofmann, the chief deputy denied Hofmann's application. He testified by deposition, entered

into evidence as part of the stipulated trial, that the denial of the application was not based on Hofmann's response to the question in the application about whether she was under indictment or information in any court for a felony. Rather, he explained that a formal charge by a prosecutor of a crime that could cause someone to be in jail for a year or more is one of the prohibitions under 18 U.S.C. § 922 (2018) that prohibits someone from obtaining a firearm.

The chief deputy drafted a denial letter that was sent to Hofmann citing the reason for the denial. He notified Hofmann in this letter that she had circled "NO" on the first question, which indicated she was not "under indictment or formal accusation of a crime by a prosecutor," but that his research revealed she was charged on October 14, 2019, with the felony offense of possession of a controlled substance in Clay County. His letter stated that "according to 18 USC 44 922(g)(1) this disqualifies you from being issued the Firearms Purchase Permit."

Exhibits entered into evidence for purposes of the bench trial show that the charges against Hofmann were, at the time she filled out the application, brought in county court through a "complaint." Approximately a month after her application, Hofmann's charges were moved to district court under an "information."

In rendering its verdict, the district court observed that the parties stipulated to the requisite intent of Hofmann for each element necessary under § 28-201 for this crime. Thus, the court continued, "[t]he sole question in this case is whether . . . Hofmann willfully provided false information on the application," and resolving that question involved a discussion of whether Hofmann was "'under an information.'" The court found, "There is no doubt that . . . Hofmann knew she was charged with a Class IV felony in Clay County" when she filled out her application and that these charges were included in the application's definition of an "information" as "'a formal accusation of a crime by a prosecutor.'" The court therefore found Hofmann willfully provided false information

on the application. Further, the district court concluded that "Hofmann's conduct constituted a substantial step in a course of conduct intended to culminate in her commission of the crime by filling out the application, signing her name to the application, paying the fee and leaving the application with [a sheriff's office employee]."

## ASSIGNMENTS OF ERROR

Hofmann assigns that the evidence was insufficient to find her guilty, because the district court erred in (1) finding that the statute allowed the State to pursue a charge for any statement provided other than the express statutory language of name, address, date of birth, and country of citizenship and (2) determining that a county court complaint was an indictment or information and that she provided false information.

## STANDARD OF REVIEW

[1] In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.[2]

[2] When a criminal defendant challenges the sufficiency of the evidence upon which a conviction is based, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3]

## ANALYSIS

Hofmann stipulated that "any intent necessary for an element pursuant to Neb. Rev. Stat. §28-201 is present."

---

[2] *State v. Comacho*, 309 Neb. 494, 960 N.W.2d 739 (2021).

[3] *Id.*

Nevertheless, Hofmann presents two arguments that, as a matter of law under the stipulated facts, the evidence is insufficient to support her conviction of attempting to "willfully provide[] false information on an application form for a certificate under section 69-2404," in violation of § 69-2408. First, Hofmann argues that an applicant cannot attempt to violate § 69-2408 when the information that was false was not information listed in § 69-2404 as to what the application "shall include." Second, Hofmann argues that an applicant who was charged under a "complaint" in county court pending a preliminary finding of probable cause cannot attempt to violate § 69-2408 when the information in the application that was false was that the applicant was not "under indictment or information in any court for a felony, or any other crime for which the judge could imprison you for more than one year"—even when the application specifically defined an "information" as "a formal accusation of a crime by a prosecutor."

Neb. Rev. Stat. §§ 69-2401 to 69-2426 (Reissue 2018) concern the purchase of handguns. Section 69-2424 provides, "The Nebraska State Patrol shall adopt and promulgate rules and regulations to carry out sections 69-2401 to 69-2425." With certain exceptions not applicable here, no person shall purchase, lease, rent, or receive transfer of a handgun until a certificate in accordance with § 69-2404 has been obtained.[4]

Section 69-2404 describes the application for such certificate:

Any person desiring to purchase, lease, rent, or receive transfer of a handgun shall apply with the chief of police or sheriff of the applicant's place of residence for a certificate. The application may be made in person or by mail. The application form and certificate shall be made on forms approved by the Superintendent of Law Enforcement and Public Safety. The application shall include the applicant's full name, address, date of birth,

---

[4] See § 69-2403.

and country of citizenship. If the applicant is not a United States citizen, the application shall include the applicant's place of birth and his or her alien or admission number. If the application is made in person, the applicant shall also present a current Nebraska motor vehicle operator's license, state identification card, or military identification card, or if the application is made by mail, the application form shall describe the license or card used for identification and be notarized by a notary public who has verified the identification of the applicant through such a license or card. An applicant shall receive a certificate if he or she is twenty-one years of age or older and is not prohibited from purchasing or possessing a handgun by 18 U.S.C. 922. A fee of five dollars shall be charged for each application for a certificate to cover the cost of a criminal history record check.

Section 69-2405 states that the chief of police or sheriff shall deny the certificate if it is determined that the purchase or possession of a handgun by the applicant would be in violation of applicable federal, state, or local law. Further, the chief of police or sheriff has 3 days to conduct an investigation to determine whether the applicant is prohibited by law from purchasing or possessing a handgun, after which time the certificate shall be either issued or denied with specific reasons, in writing, for the denial.

Section 69-2408 describes the felony of providing false information on an application for a certificate authorizing the holder to acquire handguns:

Any person who willfully provides false information on an application form for a certificate under section 69-2404 shall, upon conviction, be guilty of a Class IV felony, and any person who intentionally violates any other provision of sections 69-2401, 69-2403 to 69-2407, and 69-2409.01 shall, upon conviction, be guilty of a Class I misdemeanor. As a part of the judgment of conviction, the court may order the confiscation of the handgun.

Other provisions of §§ 69-2401 to 69-2425 pertain to Nebraska's automated criminal history files,[5] a database for firearms-related disabilities,[6] and restrictions on the sale or delivery of handguns.[7]

Under § 69-2409.01(1),

[f]or purposes of sections 69-2401 to 69-2425, the Nebraska State Patrol shall be furnished with only such information as may be necessary for the sole purpose of determining whether an individual is disqualified from purchasing or possessing a handgun pursuant to state law or is subject to the disability provisions of 18 U.S.C. 922(d)(4) and (g)(4).

Section 69-2420 makes it a Class IV felony for any person to knowingly and intentionally make any materially false oral or written statement or knowingly and intentionally furnish any false identification intended or likely to deceive the licensee in connection with the purchase, transfer, or attempted purchase of a handgun pursuant to sections 69-2410 to 69-2423.

Section 28-201 defines criminal attempt:

(1) A person shall be guilty of an attempt to commit a crime if he or she:

(a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as he or she believes them to be; or

(b) Intentionally engages in conduct which, under the circumstances as he or she believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his or her commission of the crime.

(2) When causing a particular result is an element of the crime, a person shall be guilty of an attempt to commit the crime if, acting with the state of mind required

---

[5] See § 69-2409. See, also, §§ 69-2411, 69-2412, 69-2414 to 69-2416, and 69-2419.

[6] See § 69-2409.01.

[7] § 69-2410. See, also, §§ 69-2417, 69-2418, 69-2421, and 69-2422.

to establish liability with respect to the attendant circumstances specified in the definition of the crime, he or she intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

(3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

[3-6] Hofmann's first argument is that § 69-2408 must be read together with § 69-2404 such that only false information pertaining to the applicant's full name, address, date of birth, and country of citizenship can constitute the crime of providing "false information on an application form for a certificate under section 69-2404." Several familiar principles of statutory construction are relevant to our analysis. In discerning the meaning of a statute, we must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, it being our duty to discover, if possible, the Legislature's intent from the language of the statute itself.[8] Components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of an act are consistent, harmonious, and sensible.[9] Penal statutes must be strictly construed and are considered in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.[10] A penal statute will not be applied to situations or parties not fairly or clearly within its provisions.[11]

---

[8] *Vokal v. Nebraska Acct. & Disclosure Comm.*, 276 Neb. 988, 759 N.W.2d 75 (2009).

[9] *Id.*

[10] See *id.*

[11] *Id.*

In § 69-2408, though it could have easily done so, the Legislature did not describe that it was only a crime to willfully provide false information as to the applicant's full name, address, date of birth, and country of citizenship and, if the applicant is not a U.S. citizen, as to the applicant's place of birth and his or her alien or admission number. Section 69-2408 instead states it is a crime to willfully provide false information "on an application form for a certificate under section 69-2404." Section 69-2404, in turn, does not limit the information requested in the application to the applicant's full name, address, date of birth, and country of citizenship and, if the applicant is not a U.S. citizen, as to the applicant's place of birth and his or her alien or admission number. Rather, § 69-2404 states the application "shall include" that information.

[7] The word "include," as used in a statute, connotes that the provided list of components is not exhaustive and that there are other items includable that are not specifically enumerated.[12] Nevertheless, Hofmann relies on § 69-2409.01, which states that the Nebraska State Patrol shall be furnished with only such information as may be necessary for the sole purpose of determining whether an individual is disqualified from purchasing or possessing a handgun pursuant to state law or is subject to the disability provisions of 18 U.S.C. § 922(d)(4) and (g)(4). Hofmann does not directly contend the application form violates § 69-2409.01, but she points out that an applicant's full name, address, date of birth, and country of citizenship is sufficient information for the chief of police or sheriff to run a background check and determine whether an individual is disqualified from purchasing or possessing a handgun pursuant to state law or is subject to the disability provisions of 18 U.S.C. § 922(d)(4) and (g)(4).

[8] Assuming without deciding that § 69-2409 controls application forms, it does not follow that direct information

---

[12] *In re Interest of Seth C.*, 307 Neb. 862, 951 N.W.2d 135 (2020); *State v. Jedlicka*, 305 Neb. 52, 938 N.W.2d 854 (2020).

from the applicant as to whether the applicant is under felony charges is unnecessary information for the purpose of determining whether an individual is disqualified from purchasing or possessing a handgun. Such charges would, under 18 U.S.C. § 922, disqualify the applicant from purchasing a handgun. The information thus relates to the sole purpose of determining whether the individual is disqualified from purchasing or possessing a handgun and not to any impermissible purpose. Nothing in § 69-2409, or any other provision of the statutory scheme pertaining to handguns, limits a background check as the sole means of obtaining the information of whether an applicant is disqualified from purchasing or possessing a handgun.

Section 69-2408 makes it a crime to provide false information "on an application form" that was approved by the Superintendent of Law Enforcement and Public Safety and is in compliance with any rules and regulations adopted by the Nebraska State Patrol and the governing statutes. Hofmann does not contest that the application form was duly approved and was in compliance with all governing rules, regulations, and statutes. We decline Hofmann's invitation to read § 69-2408 as making it a felony to provide false information only with respect to the minimum information of the applicant's full name, address, date of birth, and country of citizenship (and place of birth and alien or admission number if not a U.S. citizen), while shielding the applicant who provides false information in response to other lawful inquiries under the application. Even in light of principles of strict construction and reading § 69-2408 together with § 69-2404, we find no merit to Hofmann's argument that an applicant cannot attempt to provide false information in violation of § 69-2408 simply because the false information in question was something other than the applicant's full name, address, date of birth, and country of citizenship (and place of birth and alien or admission number if not a U.S. citizen).

Hofmann's remaining argument is that the application form should be read together with statutes and case law describing that until there is a bindover to district court after a finding of probable cause, a felony charge in county court is under a "complaint." According to Hofmann, this understanding of an "information" versus a "complaint" supersedes the definition of "information" in the application as "a formal accusation of a crime by a prosecutor." Therefore, because the application did not ask Hofmann whether she was under a "complaint," she could not have attempted to make a false statement in the application by answering "no" to the question of whether she was under indictment or information in any court for a felony, or any other crime for which the judge could imprison the applicant for more than 1 year.

We observe that no statute expressly defines the terms "complaint," "information," or even "indictment." Neb. Rev. Stat. § 29-1602 (Cum. Supp. 2020), relied on by Hofmann, states, "All informations shall be filed in the court having jurisdiction of the offense specified therein, by the prosecuting attorney of the proper county as informant." Neb. Rev. Stat. § 29-404 (Reissue 2016) describes that "[n]o complaint shall be filed with the magistrate unless such complaint is in writing and signed by the prosecuting attorney or by any other complainant." Neb. Rev. Stat. § 29-1501 (Reissue 2016) states various potential omissions from indictments that shall not render them invalid.

However, Hofmann points out that under Neb. Rev. Stat. § 29-1607 (Reissue 2016), "[n]o information shall be filed against any person for any offense until such person shall have had a preliminary examination . . . ." And we have treated "informations" filed before a preliminary hearing as "complaints," such that the speedy trial period does not run on the "information"[13] until after the preliminary hearing.[14]

---

[13] See Neb. Rev. Stat. § 29-1207(2) (Reissue 2016).

[14] See *State v. Boslau*, 258 Neb. 39, 601 N.W.2d 769 (1999).

This authority is not an overly clear mandate that charges brought in county court before a preliminary hearing must be considered brought under "complaints" for all purposes. More to the point, Hofmann cites to no authority for her assumption that statutory or case law definitions of these terms should control over the explicit definition of "information" set forth in the application here at issue. The application defined "information" as "a formal accusation of a crime by a prosecutor." In determining whether the applicant has attempted to give "false information on an application form for a certificate under section 69-2404," as set forth in § 69-2408, we must look principally to the language of the application form.

There is no dispute that under the definition of "information" set forth in the application form, Hofmann was under information in any court for a felony, or any other crime for which the judge could imprison her for more than 1 year. This is because, effectively, the definition set forth in the approved application form defines "informations" as encompassing "complaints." Under the definition set forth in the application, Hofmann's response in the negative was false.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime of attempted false information on a gun permit application, in violation of §§ 28-201(4)(e) and 69-2408. The application form defined the term "information" to encompass the charges against Hofmann in the "complaint" brought in county court, and a rational trier of fact could accordingly have found Hofmann believed that the "information" the application asked her about encompassed the "complaint" she had been charged with. The statutory scheme does not limit the "false information" under § 69-2408 to the basic data which is listed in § 69-2404 and which is sufficient to run a background search. It can encompass the charges against Hofmann, which disqualified her from purchasing a gun. We can find no merit to Hofmann's assertion that her conviction

should be set aside, especially when Hofmann stipulated to the necessary mens rea for the crime.

That said, we are concerned by the fact that the application form defines "information" differently than how courts normally understand that term. Differing definitions for different purposes before different authorities can lead to confusion on the part of the applicant. It is self-evident that the application form should be as clear as possible. When it is not, mistakes can be made. And when terms in the application are defined inconsistently with their use elsewhere, there are more likely to be factual questions about whether an applicant has provided false information on the application "willfully," as is required to commit the crime set forth in § 69-2408.

But, again, due to the stipulated facts, Hofmann does not argue that the evidence was insufficient because she was confused about "informations" versus "complaints." Hofmann chose to narrow the issues in this case to two questions of law. As already explained, we find neither of those questions to have merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

Affirmed.

Papik, J., concurring.

The conviction Tanya L. Hofmann challenges in this appeal stems from an answer she provided to a question on a firearm permit application. Although I believe an argument can be made that the question on the application was ambiguous, under the circumstances, I agree that Hofmann's conviction should be affirmed.

The question at issue asked, "Are you under indictment or information in any court for a felony, or any other crime for which the judge could imprison you for more than one year? (An information is a formal accusation of a crime by a prosecutor. An indictment is from a grand jury)."

The majority finds the language in parentheses to include a definition of the term "information" for purposes of the application form. As the majority understands it, the first sentence in the parentheses defines "information" to include *any* formal accusation of a crime by a prosecutor and thus would encompass complaints filed in county court. I agree that is a possible understanding of the question, but I am not sure it is the only one.

Some inferences must be made to understand the language in the parentheses to provide a definition of "information" for purposes of the application. The language does not say it is setting forth a definition. Further, the references to both "information" and "indictment" read more like explanatory statements than exhaustive definitions: The language does not state that *any* formal accusation of a crime by a prosecutor should be treated as an information, only that an information is a formal accusation of a crime by a prosecutor; the reference to "indictment" is even more cursory. And, most importantly, as the majority opinion acknowledges, in Nebraska the term "information" is generally used to refer to a particular type of formal accusation of a crime by a prosecutor—one that is filed in district court either after a county court holds a preliminary hearing and finds probable cause exists to charge the defendant with a crime in the case of an ordinary information or one that is filed initially in the district court in the case of a direct information. See, e.g., *State v. Boslau*, 258 Neb. 39, 601 N.W.2d 769 (1999). Based on all this, I believe it is possible that an applicant could understand the question to be asking whether he or she was under an information as that term is generally used under Nebraska law, i.e., under an information filed in district court.

There are obvious concerns about holding a person criminally liable for his or her responses to questions that could be understood in different ways. Federal courts have developed two legal categories for dealing with claims that a perjury or false statement prosecution is based on responses

to ambiguous questions: fundamental ambiguity and arguable ambiguity.

Federal courts will treat a question as fundamentally ambiguous in narrow circumstances, when the question lacks "'a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony.'" *U.S. v. Strohm*, 671 F.3d 1173, 1179 (10th Cir. 2011). If a question is fundamentally ambiguous, a response to it cannot be the basis for false statement liability. *Id.* Whether a question is fundamentally ambiguous is decided by the court as a matter of law. *Id.* See, also, *United States v. Lighte*, 782 F.2d 367 (2d Cir. 1986).

A question is arguably ambiguous, on the other hand, where "more than one reasonable interpretation of a question exists." *Strohm*, 671 F.3d at 1181. Even when a question is arguably ambiguous, a person can still intend to give and, in fact, give a false answer. Accordingly, the meaning of an arguably ambiguous question and what the defendant understood the question to mean are to be determined by the finder of fact and reviewed for sufficiency of the evidence. *Id.*

In this case, Hofmann presented no argument that the question was so ambiguous that she could not attempt to give a false answer as a matter of law. And while perhaps Hofmann could have developed an argument in the district court that due to ambiguity, she misunderstood the question at issue and did not intend to give a false answer, I do not believe she can now show that there was insufficient evidence to support her conviction. Viewing the evidence in the light most favorable to the prosecution, I believe a rational trier of fact could have found that the language in parentheses defined "information" to encompass any formal accusation of a crime by a prosecutor and that Hofmann understood the question and intended to give a false response, especially in light of Hofmann's stipulation to the necessary intent for the crime.