Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/31/2025 09:10 AM CST

Lizette Aguilar, appellee, v.
Ana Valdez-Mendoza, appellant.

___ N.W.3d ___

Filed January 31, 2025.    No. S-24-286.

1.  **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.
2.  **Statutes: Appeal and Error: Words and Phrases.** When terms in a statute are not specifically defined by the statute, principles of statutory interpretation generally require an appellate court to give such terms their plain and ordinary meaning.
3.  **Appeal and Error: Words and Phrases.** Appellate courts often turn to dictionaries to ascertain a word's plain and ordinary meaning.
4.  **Statutes: Legislature: Words and Phrases.** It is a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time the Legislature enacted the statute.
5.  **Statutes: Legislature: Presumptions.** In enacting a statute, the Legislature is presumed to know the general condition surrounding the subject matter of the legislative enactment, and it is presumed to know and contemplate the legal effect that accompanies the language it employs to make effective the legislation.
6.  **Protection Orders: Words and Phrases.** "Affinity" under Neb. Rev. Stat. § 42-903(3) (Cum. Supp. 2024) means the relationship that arises as a result of the marriage contract between one spouse and the blood relations of the other, in contradistinction from consanguinity or relationship by blood.

Appeal from the District Court for Madison County, James G. Kube, Judge. Reversed and vacated.

Timothy P. Matas, of Stratton, DeLay, Doele, Carlson, Buettner & Stover, for appellant.

No appearance by appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, and Freudenberg, JJ.

Freudenberg, J.

## INTRODUCTION

Lizette Aguilar petitioned for a domestic abuse protection order pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2024) against her daughter's stepmother, Ana Valdez-Mendoza. The district court issued an ex parte protection order, which the court affirmed following a hearing. Valdez-Mendoza appeals, arguing that the court erred in overruling her motion to dismiss and affirming the protection order, because it erroneously concluded that Aguilar and Valdez-Mendoza were related by "affinity" under Neb. Rev. Stat. § 42-903 (Cum. Supp. 2024). Aguilar did not file a response.

We conclude that the district court erred in concluding that the parties were related by "affinity."

## BACKGROUND

In February 2024, Aguilar petitioned for a domestic abuse protection order pursuant to § 42-924 against Valdez-Mendoza. In her petition, Aguilar wrote that Valdez-Mendoza was related to her as her "[d]aughter's [s]tepmother." Valdez-Mendoza is married to Aguilar's "ex," Fernando Mendoza. Aguilar and Mendoza have a 12-year-old daughter.

Aguilar's petition alleged that about a week prior, Aguilar had visited Mendoza's house to drop their daughter off with Mendoza. When Aguilar arrived, Mendoza and Valdez-Mendoza came outside the house and Aguilar talked to Mendoza about their daughter. Soon thereafter, Valdez-Mendoza pushed Aguilar, causing Aguilar to fall to the ground. Valdez-Mendoza proceeded to repeatedly punch Aguilar. Mendoza "got ahold" of Aguilar, and Valdez-Mendoza told Mendoza to "'[l]et go'" of Aguilar, saying to him, "'I've got this.'"

Valdez-Mendoza and Mendoza continued to punch and kick Aguilar. Aguilar yelled for Mendoza to get off of her, and Valdez-Mendoza repeatedly grabbed Aguilar's hair and "tr[ied] to slam [Aguilar's] head into the concrete." Aguilar tried covering her head because she was afraid of its hitting the cement and of thus being killed.

After the attack, which lasted several minutes, Valdez-Mendoza and Mendoza went inside the house. Aguilar told a neighbor to call the 911 emergency dispatch service, and she was eventually taken to a hospital.

Based on Aguilar's allegations, the district court issued an ex parte domestic abuse protection order, effective for 1 year. Valdez-Mendoza subsequently requested a hearing on the matter.

At the hearing, Valdez-Mendoza appeared with counsel and Aguilar appeared pro se. Valdez-Mendoza moved to dismiss the petition, arguing that domestic abuse protection orders are available only to parties specified by § 42-903(3) (defining "[f]amily or household members"). Valdez-Mendoza contended that her relationship to Aguilar through being Aguilar's daughter's stepmother is not covered by § 42-903(3). In response to counsel's argument, Aguilar stated that she sought the protection order to protect herself when she picks up and drops off her daughter every 2 weeks at Mendoza's home.

The district court overruled Valdez-Mendoza's motion to dismiss. The court found that Valdez-Mendoza and Aguilar had a relation by "affinity" under § 42-903(3) that was sufficient to proceed on the matter. The court reasoned that Aguilar and Valdez-Mendoza had a "relationship by marriage" because Aguilar is related to her daughter and the daughter's father married Valdez-Mendoza. The court acknowledged that the relationship is "distant" but thought that the statutory phrase "'related by affinity' is loose enough" for the relationship to qualify under § 42-903(3).

Valdez-Mendoza did not dispute Aguilar's factual allegations about the altercation. Aguilar testified that Mendoza

is her daughter's father and is married to Valdez-Mendoza. Aguilar denied ever residing with, being blood-related to, being in-laws with, or having a dating relationship with Valdez-Mendoza.

At the close of evidence, Valdez-Mendoza renewed her motion to dismiss, which the court overruled. The court entered an order affirming its ex parte domestic abuse protection order.

## ASSIGNMENTS OF ERROR

Valdez-Mendoza assigns the district court erred in finding that she and Aguilar were related by affinity, causing them to be family or household members as defined in § 42-903(3).

## STANDARD OF REVIEW

[1] Statutory interpretation is a question of law that an appellate court resolves independently of the trial court.[1]

## ANALYSIS

The sole issue before us is whether Aguilar and Valdez-Mendoza were "related by . . . affinity" to constitute "[f]amily or household members" under § 42-903(3). Under the Protection from Domestic Abuse Act,[2] § 42-924(1) provides that "[a]ny victim of domestic abuse" may seek a domestic abuse protection order.[3] In the context of a court's deciding whether to affirm or rescind the initial ex parte protection order, we have held that whether domestic abuse occurred is a threshold issue, and absent abuse as defined by § 42-903(1), a protection order may not remain in effect.[4] "Abuse" is statutorily defined as the occurrence of one or more of the following

---

[1] *Mullins v. Box Butte County*, 317 Neb. 937, 13 N.W.3d 67 (2024).

[2] Neb. Rev. Stat. § 42-901 et seq. (Reissue 2016 & Cum. Supp. 2024).

[3] See *Garrison v. Otto*, 311 Neb. 94, 970 N.W.2d 495 (2022).

[4] *Id*. See, also, *Robert M. on behalf of Bella O. v. Danielle O.*, 303 Neb. 268, 928 N.W.2d 407 (2019) (citing § 42-924).

acts between "family or household members": (1) attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument; (2) placing, by means of credible threat, another person in fear of bodily injury; or (3) engaging in sexual contact or sexual penetration without consent.[5] Section 42-903(3) provides in part:

> Family or household members includes spouses or former spouses, children, persons who are presently residing together or who have resided together in the past, persons who have a child in common whether or not they have been married or have lived together at any time, *other persons related by consanguinity or affinity*, and persons who are presently involved in a dating relationship with each other or who have been involved in a dating relationship with each other.

(Emphasis supplied.)

The statute plainly uses the word "includes" before listing multiple different relationships.[6] As we have noted in a recent string of cases, traditionally, the word "include" in a statute connotes that the provided list of components is not exhaustive and that there may be other items includable, though not specifically enumerated.[7] However, the meaning of "includes"

---

[5]  § 42-903(1).

[6]  § 42-903(3).

[7]  See, *State v. Webb*, 311 Neb. 694, 974 N.W.2d 317 (2022); *State v. Knight*, 311 Neb. 485, 973 N.W.2d 356 (2022); *State v. Hofmann*, 310 Neb. 609, 967 N.W.2d 435 (2021); *Lewis v. MBC Constr. Co.*, 309 Neb. 726, 962 N.W.2d 359 (2021); *In re Interest of Seth C.*, 307 Neb. 862, 951 N.W.2d 135 (2020); *State v. Jedlicka*, 305 Neb. 52, 938 N.W.2d 854 (2020); *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017). See, also, *Samantar v. Yousuf*, 560 U.S. 305, 130 S. Ct. 2278, 176 L. Ed. 2d 1047 (2010) (recognizing "include" can signal list is illustrative rather than exhaustive). Cf. *Didier v. Ash Grove Cement Co.*, 272 Neb. 28, 718 N.W.2d 484 (2006). See, generally, Bryan A. Garner, A Dictionary of Modern Legal Usage 431, 432 (2d ed. 1995) (discussing drafters' use of "including" and "including but not limited to").

depends on the context in which it is used.[8] We disagree with our dissenting colleagues that, in the context of § 42-903(3), the use of "includes" provides sufficient clarity such that the scope of "[f]amily or household members" is properly before us. Moreover, even if we were to determine that "includes" in the context of § 42-903(3) indicates the list is not exhaustive, we are not persuaded that Aguilar and Valdez-Mendoza's relationship would fit within the meaning of "[f]amily or household members" as the dissenting opinion contends.

In this case, the parties presented no other arguments at the time of the hearing that their relationship otherwise satisfied the meaning of "[f]amily or household members" in the absence of the district court's finding of affinity under § 42-903(3) and treated the statute's list as exhaustive. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.[9] In addition, Aguilar has not participated in this appeal. Therefore, we do not consider whether the list of relationships in § 42-903(3) is exhaustive or whether alternative grounds exist to establish the necessary "[f]amily or household member" element of proof in this case.

The Protection from Domestic Abuse Act does not define "affinity," nor have we previously interpreted the term within this context. Therefore, to determine whether Aguilar and Valdez-Mendoza were "[f]amily or household members" under § 42-903(3), we must ascertain the definition of "affinity" within the statutory phrase "other persons related by consanguinity or affinity."

---

[8] See Black's Law Dictionary 763 (6th ed. 1990) ("[t]erm may, according to context, express an enlargement"). See, also, Webster's New Collegiate Dictionary 576 (8th ed. 1981) (defining "include" as "to take in or comprise"); Ballentine's Law Dictionary 601 (3d ed. 1969) (defining "include" as "[t]o comprise" and "including" as "term of enlargement rather than limitation").

[9] *State v. Thomas*, 303 Neb. 964, 932 N.W.2d 713 (2019); *Hargesheimer v. Gale*, 294 Neb. 123, 881 N.W.2d 589 (2016).

[2-4] When terms in a statute are not specifically defined by the statute, our principles of statutory interpretation generally require us to give such terms their plain and ordinary meaning.[10] Appellate courts often turn to dictionaries to ascertain a word's plain and ordinary meaning.[11] It is a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time the Legislature enacted the statute.[12]

The phrase "other persons related by consanguinity or affinity" was added to § 42-903(3) in 1986.[13] Relevant here, at that time, the plain meaning of "affinity" included a "relationship by marriage," "kinship," and "likeness based on relationship or causal connection."[14] Similarly, Black's Law Dictionary's definitions for "affinity" included (1) "[a] close agreement; relation; spiritual relation or attraction held to exist between certain persons"; (2) "[r]elation which one spouse[,] because of marriage[,] has to blood relatives of the other"; and (3) "[t]he connection existing, in consequence of marriage, between each of the married persons and the kindred of the other."[15] The "doctrine of affinity" originated from the notion that "marriage makes husband and wife one," which results in "[t]he husband['s] ha[ving] the same relation, by affinity, to his wife's blood relatives as she has to them by consanguinity and vice versa."[16]

[5] These definitions of "affinity" coincide with the definition we provided in another context. In *Zimmerer v.*

---

[10] *Brown v. State*, 315 Neb. 336, 996 N.W.2d 56 (2023).

[11] *Fountain II v. Douglas Cty. Bd. of Equal.*, 315 Neb. 633, 999 N.W.2d 135 (2024).

[12] *Id*.

[13] See 1986 Neb. Laws, L.B. 448, § 1.

[14] Webster's New Collegiate Dictionary, *supra* note 8 at 20.

[15] Black's Law Dictionary 54 (5th ed. 1979).

[16] *Id*.

*Prudential Ins. Co.*,[17] we defined "affinity" as used in Neb. Rev. Stat. § 24-315 (1943) (now codified at Neb. Rev. Stat. § 24-739 (Reissue 2016)), which pertains to circumstances where judges would be disqualified from presiding over certain cases. In that context, we defined "affinity" as "the relationship which arises as a result of the marriage contract between one spouse and the blood relations of the other, in contradistinction from consanguinity or relationship by blood."[18] Notably, we provided this definition before the Legislature amended § 42-903(3) to include relation by "affinity." In enacting a statute, the Legislature is presumed to know the general condition surrounding the subject matter of the legislative enactment, and it is presumed to know and contemplate the legal effect that accompanies the language it employs to make effective the legislation.[19]

[6] For the above reasons, we apply our definition from *Zimmerer* and conclude that under § 42-903(3), "affinity" means "the relationship which arises as a result of the marriage contract between one spouse and the blood relations of the other, in contradistinction from consanguinity or relationship by blood."[20]

Under this definition, we cannot conclude that Aguilar and Valdez-Mendoza were related by "affinity" to have constituted "[f]amily or household members" as contemplated in § 42-903(3). Through her marriage to Mendoza, Valdez-Mendoza is related by affinity to Mendoza's biological daughter. However, that affinity does not extend to Aguilar herself, who is not related by consanguinity to Mendoza. Accordingly,

---

[17] *Zimmerer v. Prudential Ins. Co.*, 150 Neb. 351, 34 N.W.2d 750 (1948).

[18] *Id*. at 353, 34 N.W.2d at 751. See, also, *Spracklin v. Spracklin*, 21 Neb. App. 271, 837 N.W.2d 826 (2013).

[19] *State v. Brennauer*, 314 Neb. 782, 993 N.W.2d 305 (2023).

[20] *Zimmerer v. Prudential Ins. Co., supra* note 17, 150 Neb. at 353, 34 N.W.2d at 751.

the district court erred in concluding that Aguilar and Valdez-Mendoza were related by affinity.

## CONCLUSION

Under the Protection from Domestic Abuse Act, Aguilar and Valdez-Mendoza were not related by affinity. Accordingly, we reverse the decision of the district court and vacate the protection order.

REVERSED AND VACATED.

CASSEL, J., dissenting.

While I agree that the relationship between Aguilar and Valdez-Mendoza was not one of affinity, I disagree that it does not fit within the definition of "[f]amily or household members" in Neb. Rev. Stat. § 42-903(3) (Cum. Supp. 2024). For that reason, I respectfully dissent.

Both Aguilar and Valdez-Mendoza were related to Aguilar's daughter—Aguilar as her mother (i.e., by consanguinity) and Valdez-Mendoza as her stepmother (i.e., by affinity). However, Aguilar and Valdez-Mendoza were not directly related to each other by either consanguinity or affinity.

But affinity is only one permissible way of establishing the necessary relationship. Section 42-903(3), in pertinent part, states:

> Family or household members *includes* spouses or former spouses, children, persons who are presently residing together or who have resided together in the past, persons who have a child in common whether or not they have been married or have lived together at any time, other persons related by consanguinity or affinity, and persons who are presently involved in a dating relationship with each other or who have been involved in a dating relationship with each other.

(Emphasis supplied.)

The word "includes" is significant. As used in a statute, it connotes that the provided list of components is not exhaustive

and that there are other items includable that are not specifically enumerated.[1]

The word "family" is not specifically defined in the Protection from Domestic Abuse Act[2]; thus, I look to its plain and ordinary meaning.[3] A legal dictionary provides several definitions: "1. A group of persons connected by blood, by affinity, or by law, esp. within two or three generations. 2. A group consisting of parents and their children. 3. By extension, a group of people who live together and usu. have a shared commitment to a domestic relationship."[4] The same source defines "blended family" as "combined families of persons with children from earlier marriages or relationships."[5]

Section 42-903(3)'s list makes it clear that "family" is not limited to the three definitions in the legal dictionary. Former spouses, persons who have resided together in the past, and persons who are presently involved in a dating relationship with each other or who have been involved in a dating relationship with each other would not fall within the three definitions of "family" in the legal dictionary. But they are included in the statutory list. By including them within that definition, the Legislature broadened the traditional, ordinary definition.

In adopting the Protection from Domestic Abuse Act, the Legislature intended to "lessen and reduce the trauma of domestic abuse."[6] When the trauma is inflicted by a stepparent against a biological parent, its significance does not diminish.

---

[1] See, *State v. Webb*, 311 Neb. 694, 974 N.W.2d 317 (2022); *State v. Knight*, 311 Neb. 485, 973 N.W.2d 356 (2022); *State v. Hofmann*, 310 Neb. 609, 967 N.W.2d 435 (2021).

[2] See Neb. Rev. Stat. §§ 42-901 to 42-931 (Reissue 2016 & Cum. Supp. 2024).

[3] See *In re Estate of McCormick*, 317 Neb. 960, 12 N.W.3d 802 (2024) (statutory interpretation begins with text, and text is to be given its plain and ordinary meaning).

[4] Black's Law Dictionary 747 (11th ed. 2019).

[5] *Id*.

[6] § 42-902.

The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.[7] The Legislature's definition recognizes evolving societal values concerning family structure. I cannot believe that the Legislature intended to exclude under § 42-903(3) the relationship between a biological parent and a stepparent from that of "[f]amily or household members."

The majority focuses on the district court's reliance on "affinity." This misses the forest for the trees. We have long held that a correct result will not be set aside merely because the lower court applied the wrong reasoning in reaching that result.[8] While the relationship between Aguilar and Valdez-Mendoza was not one of "affinity," it was one included in the meaning of "[f]amily or household members" under § 42-903(3). That was enough.

Neither Aguilar's default on appeal nor the protection order's looming expiration justifies setting it aside. I would affirm the judgment of the district court.

In light of the reading of § 42-903(3) given by this court's majority, the Legislature may wish to amend that section to specifically address relationships like that of Aguilar and Valdez-Mendoza.

Miller-Lerman, J., joins in this dissent.

---

[7] *In re Estate of McCormick, supra* note 3.

[8] See, e.g., *State v. Devers*, 313 Neb. 866, 986 N.W.2d 747 (2023).