276 Neb. 851
NORMAN H. AGENA, LANCASTER COUNTY ASSESSOR, APPELLEE AND CROSS-APPELLEE,
v.
LANCASTER COUNTY BOARD OF EQUALIZATION, APPELLANT, AND TREETOP, INC., APPELLEE AND CROSS-APPELLANT.
NORMAN H. AGENA, LANCASTER COUNTY ASSESSOR, APPELLEE AND CROSS-APPELLEE,
v.
LANCASTER COUNTY BOARD OF EQUALIZATION, APPELLANT, AND JON L. LARGE, APPELLEE AND CROSS-APPELLANT.
NORMAN H. AGENA, LANCASTER COUNTY ASSESSOR, APPELLEE,
v.
LANCASTER COUNTY BOARD OF EQUALIZATION, APPELLANT, AND DIRK S. JOHNSON AND JESSICA JOHNSON, APPELLEES.
NORMAN H. AGENA, LANCASTER COUNTY ASSESSOR, APPELLEE,
v.
LANCASTER COUNTY BOARD OF EQUALIZATION, APPELLANT, AND LINCOLN CITY CHURCH, APPELLEE.
Nos. S-08-154, S-08-157
Supreme Court of Nebraska.
Filed December 5, 2008.
William E. peters, of peters & Chunka, p.C., L.L.O., for appellant.
Charles W. Campbell, of Angle, Murphy & Campbell, p.C., and Vincent Valentino for appellee Norman H. Agena.
Steven E. Guenzel, of Johnson, Flodman, Guenzel & Widger, for appellee Treetop, Inc.
William F. Austin, of erickson & Sederstrom, p.C., for appellee Jon L. Large.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

I. BACKGROUND
These cases involve the eligibility of four properties for special valuation as agricultural or horticultural land for tax purposes under Neb. Rev. Stat. §§ 77-201(2) and 77-1344 (Cum. Supp. 2006). This particular special valuation is colloquially known as "greenbelt status." These four properties are the "Treetop" property, the "Large" property, the "Johnson" property, and the "Church" property.

1. DISQUALIFICATION OF GREENBELT STATUS AND SUBSEQUENT PROTEST AND APPEAL
prior to the 2007 tax year, the properties, or at least portions of the properties, at issue in these appeals had been considered agricultural land and qualified for greenbelt status under § 77-1344. However, as a result of an amendment to Neb. Rev. Stat. § 77-1359 (Cum. Supp. 2006), which defines agricultural or horticultural land, and pursuant to its authority under Neb. Rev. Stat. §§ 77-1347 (Cum. Supp. 2006) and 77-1347.01 (Supp. 2007), the Lancaster County assessor's office reevaluated certain properties receiving greenbelt status. pursuant to this evaluation, Norman H. Agena, the Lancaster County assessor, recommended disqualification of the greenbelt status for each of these properties. In response, each taxpayer filed a protest with the Lancaster County Board of Equalization (Board), as permitted by § 77-1347.01. The taxpayers argued that their properties were primarily used for agricultural purposes and therefore entitled to continued greenbelt status.
The Board rejected the county assessor's recommendations and instead agreed with the taxpayers that each property was being primarily used for an agricultural purpose and was entitled to greenbelt status. The county assessor appealed the Board's decisions to the Tax Equalization and Review Commission (TERC) pursuant to § 77-1347.01 and Neb. Rev. Stat. § 77-5013 (Cum. Supp. 2006). TERC reversed the Board's decisions and concluded that none of the properties were agricultural as defined by § 77-1359. pursuant to Neb. Rev. Stat. § 77-5019 (Cum. Supp. 2006), the Board appeals. Two of the four taxpayers cross-appeal.

2. "TREETOP" PROPERTYCASE NO. S-08-154
Treetop, Inc., is a family corporation formed for purposes of holding ownership in the family's farmland. The vice president of Treetop is Steven E. Guenzel. prior to 1998, Treetop owned land totaling 120 acres. In 1998, Guenzel and his wife formed a limited liability company for purposes of starting a business involving the production and sale of hydroponic tomatoes. Guenzel and his wife arranged a like-kind exchange wherein they acquired title to 19.98 acres of land owned by Treetop in order to house their business. The land in question is located in an agricultural district, but does not have a Farm Service Agency (FSA) number. The business operated from 1998 to 2003, but ceased operations because it was not profitable. prior to the hearing before TERC, Guenzel and his wife deeded the property back to Treetop.
The property in question houses a utility building and a greenhouse formerly used for growing tomatoes. These buildings are located on approximately 1 acre of land. Attempts to sell the greenhouse have been unsuccessful. The remaining acres are not farmed or fenced in. There are walnut trees located on the land, and Guenzel indicated an interest in harvesting these trees. However, similar trees on adjacent land owned by Treetop have not been harvested. Guenzel made no mention of the trees to the county assessor or before the Board, and he acknowledged at oral argument before this court that it would be difficult to contend that these trees qualified as an agricultural purpose under § 77-1359.
There is no residence on the property, and according to the record, it is not feasible to build a residence for two reasons: (1) Zoning regulations prevent the construction of a residence on less than 20 acres of land zoned agricultural, and (2) soil conditions prevent the installation of a traditional septic system.

3. "LARGE" PROPERTYCASE NO. S-08-155
Jon L. Large owns 21 acres of land located in Lancaster County, Nebraska. Large purchased the property in 2002 in order to reside in the existing home, which has a detached garage and rests on approximately 2.3 acres. Large testified that he purchased the property because he "wanted to live on a piece of agricultural property."
Large testified that he maintains between 40 and 88 grapevines on the east side of his residence, as well as nine fruit trees on the west side. At the present time, no income has been realized from these ventures, but Large indicated that it will take several years for the fruit to develop. As with Guenzel, these ventures were not mentioned to the county assessor or to the Board. In addition, Large rents out between 16 and 18 acres to a local farmer who farms the land in conjunction with adjacent parcels of land owned by the farmer and another property owner. The farmer has an fSa number. Large is paid $1,157 per year in rent; in 2006, the land produced $5,968 in income for the farmer.

4. "JOHNSON" PROPERTYCASE NO. S-08-156
Dirk S. Johnson and Jessica Johnson own 20 acres of land located in Lancaster County. The Johnsons purchased the property in 1997 or 1998 with the goal of constructing a residence. For 5 years, the Johnsons leased the entire property to a dairy farmer. In approximately 2002, a storage building and a residence for the Johnsons were constructed on 2 acres. The lease to the dairy farmer was reduced accordingly. That lease was terminated in 2004. Since that time, the Johnsons have leased the property to other local farmers. The current lessee has his own FSA number and has planted and harvested crops on the 18 acres, retaining all profits and paying rent for the use of the land. He paid a total rent of $910 for the 2006 tax year. According to the record, this farmer also farms land lying to the north of the Johnsons' property. Land lying to the south is separately farmed.

5. "CHURCH" PROPERTYCASE NO. S-08-157
Lincoln City Church owns approximately 26 acres of land purchased in 2000 for the purpose of constructing a church building. That building was built shortly after the purchase of the land. The building is used for worship, as a Christian school, and as a daycare. In 2001, 6 acres of the property were granted a religious exemption; the remaining land was not granted such an exemption. There are no immediate plans to expand or erect any new structures on the balance of the land owned by the church. This remaining land is leased to a local farmer. That farmer and the church are currently involved in a profit-sharing arrangement wherein the church pays no expenses and receives one-half of the crop revenue. The land does not have an FSA number.

II. ASSIGNMENTS OF ERROR
The Board assigns that TERC erred in finding that the primary use of these parcels was not for commercial agricultural use.
Treetop cross-appeals and assigns, restated, that (1) the statutes in question are unconstitutional and (2) TERC erred in reversing the Board's decision finding the primary purpose of its parcel was agricultural and therefore the property was entitled to greenbelt status.
Large cross-appeals and assigns, restated and consolidated, that TERC erred in (1) reversing the Board's decision finding the primary purpose of his parcel was agricultural and therefore the property was entitled to greenbelt status and (2) admitting the testimony of Board member Ray Stevens regarding his opinion as to factors that should be considered in determining an agricultural or horticultural purpose.
Neither the Johnsons nor Lincoln City Church filed crossappeals in their respective cases, nor did either party make an appearance in these appeals.

III. STANDARD OF REVIEW
[1] Decisions rendered by TERC shall be reviewed by an appellate court for errors appearing on the record of the commission.[1]
Whether a statute is constitutional is a question of law.[2] Statutory interpretation also is a question of law, which an appellate court resolves independently of the trial court.[3]

IV. ANALYSIS

1. WHETHER BOARD HAS STANDING TO APPEAL
In the county assessor's brief, he raises the issue of whether the Board has standing to challenge the constitutionality of a statute. For reasons which will become apparent, we need not and do not address this precise question. We do, however, believe that we should determine the more general question of whether the Board has standing to appeal TERC's decisions to this court.
Standing is the legal or equitable right, title, or interest in the subject matter of the controversy.[4] Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court.[5]
We conclude that the Board has standing. Section 77-5019(1) provides in part that
[a]ny party aggrieved by a final decision in a case appealed to [TERC], any party aggrieved by a final decision of [TERC] on a petition, or any party aggrieved by an order of [TERC] issued pursuant to section 77-5020 or sections 77-5023 to 77-5028 shall be entitled to judicial review in the Court of Appeals. Upon request of the county, the Attorney General may appear and represent the county or political subdivision in cases in which [TERC] is not a party.
To begin, the above language allowing the Attorney General to represent the county under certain circumstances supports a conclusion that the Legislature intended for the Board to be involved in appeals from TERC decisions. We note that the statute provides for the county and not specifically the Board to request Attorney General representation, but we are not persuaded that such distinction is of any import in this case.
In addition, a review of the records indicates that the Board was treated as, and acted as, a party to the proceedings before TERC. After the Board reversed the county assessor's denials of greenbelt status for the properties in question, the county assessor appealed those decisions to TERC. The Board was named as appellee in those appeals and filed answers in response to the county assessor's appeals. The Board appeared at the TERC hearing and was represented by counsel at that hearing. All revelant filings were served upon the Board. Upon reversal of its decisions, the Board requested appellate review of TERC's decisions. All of this lends further support to the conclusion that the Board has standing to appeal TERC's decisions to this court.

2. BOARD'S APPEAL AND TREETOP'S AND LARGE'S CROSS-APPEALS
Having concluded that the Board has standing to appeal these decisions, we turn to the arguments presented on appeal. As noted, the Board assigns that "TERC erred in finding that the primary use of the parcel[s] was not for commercial agricultural use." And on cross-appeal, both Treetop and Large assign that TERC erred in reversing the Board's decisions finding that the primary use of their respective properties was agricultural and in granting to their respective properties greenbelt status. In addition, Treetop assigns that the 2006 amendments to Neb. Rev. Stat. § 77-132 (Cum. Supp. 2006) and § 77-1359 are unconstitutionally vague and violate constitutional requirements regarding uniformity. Finally, Large assigns that TERC erred in admitting the testimony of Board member Stevens.
As an initial matter, we note the Board assigns only that TERC erred in finding the primary use of each parcel was not for commercial agricultural use. However, in its brief, the Board argues that §§ 77-132 and 77-1359 are unconstitutionally vague and also that these statutes violate article VIII, § 1, of the Nebraska Constitution.
[6] This court has repeatedly held that errors argued but not assigned will not be considered on appeal.[6] And because the Board failed to specifically assign the alleged unconstitutionality of §§ 77-132 and 77-1359, we decline to reach that issue as raised by the Board. We note that we will reach certain constitutional arguments which were raised by Treetop. However, we will address the assertion, raised by the Board, and by Treetop and Large, that TERC erred in reversing the decisions of the Board finding their respective properties to be agricultural and granting those properties greenbelt status.

(a) RELEVANT STATUTORY PROVISIONS
We begin with a review of the relevant statutory provisions. Under § 77-1344, special valuation (i.e., greenbelt status) can only be applied to agricultural or horticultural land. Such land is defined under § 77-1359, which provides in relevant part:
(1) Agricultural land and horticultural land means a parcel of land which is primarily used for agricultural or horticultural purposes, including wasteland lying in or adjacent to and in common ownership or management with other agricultural land and horticultural land. Agricultural land and horticultural land does not include any land directly associated with any building or enclosed structure;
(2) Agricultural or horticultural purposes means used for the commercial production of any plant or animal product in a raw or unprocessed state that is derived from the science and art of agriculture, aquaculture, or horticulture.
"Parcel" is defined by § 77-132 as
a contiguous tract of land determined by its boundaries, under the same ownership, and in the same tax district and section. Parcel also means an improvement on leased land. If all or several lots in the same block are owned by the same person and are contained in the same tax district, they may be included in one parcel.
The prior version of § 77-1359 is relevant in this case. That version provided in relevant part:
For purposes of sections 77-1359 to 77-1363:
(1) Agricultural land and horticultural land shall mean land which is primarily used for the production of agricultural or horticultural products, including wasteland lying in or adjacent to and in common ownership or management with land used for the production of agricultural or horticultural products. . . .
(2) Agricultural or horticultural products shall include grain and feed crops; forages and sod crops; animal production, including breeding, feeding, or grazing of cattle, horses, swine, sheep, goats, bees, or poultry; and fruits, vegetables, flowers, seeds, grasses, trees, timber, and other horticultural crops[.][7]

(b) Meaning of § 77-1359
The definition of agricultural land under § 77-1359 is central to the resolution of this case. In particular, we are concerned with the following language: "[agricultural land . . . means a parcel of land which is primarily used for agricultural . . . purposes . . . . Agricultural land . . . does not include any land directly associated with any building or enclosed structure."[8] As is noted above, this language was amended in 2006, and the statute previously stated that "[a]gricultural land . . . shall mean land which is primarily used for the production of agricultural. . . products."[9]
In concluding that the subject properties were not agricultural and therefore not eligible for greenbelt status, the county assessor concluded that the amendment to § 77-1359 effected a change in the operation of the statute. In particular, the county assessor noted that the addition of the term "parcel," defined as a "contiguous tract of land,"[10] indicated that he was to consider the primary use of an entire parcel rather than the primary use of the land. prior to the change in the statute, the county assessor had divided the land into different uses, regardless of whether the use was primary. Thus, if specific land was used for agricultural purposes, the land would be considered agricultural land and would be entitled to greenbelt status. Any portion of land with a residence on it, however, would not have been considered agricultural.
In contrast, the Board made its decision by asking three questions of property owners: (1) whether the property had an FSA number; (2) whether a form 1040 farm tax return was filed showing farm income; and (3) whether a "majority" of the parcel (determined by looking at the number of acres devoted to the activity) generated income from recreation, hobby, or agricultural or horticultural use. According to a member of the Board, the Board gave consideration to whether there was a residence on the property and then "looked at the balance of the land to see how that was actually being used."
For a court to inquire into a statute's legislative history, the statute in question must be open to construction. A statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.[11] A statute is ambiguous when the language used cannot be adequately understood either from the plain meaning of the statute or when considered in pari materia with any related statutes.[12]
Section 77-1359 requires an examination of an entire parcel to determine primary use. While the county assessor focuses on the addition of the term "parcel" and concludes that such requires his office to consider the use of the land as a whole, the Board concludes that "primary use" means the use of a majority of the acres of a parcel. Given the language of the statute, both are reasonable interpretations. We therefore conclude that § 77-1359 is ambiguous. Thus, in interpreting § 77-1359, we look to its legislative history.
The committee statement is particularly telling with respect to the amendment of § 77-1359. That statement reads in part:
Agricultural and horticultural land means a parcel of land predominately used for agricultural purposes. .. . The use of the term "parcel" means that entire tracts will be considered when examining the predominate use. Currently, many owners have argued that part of a parcel is still eligible for greenbelt assessment even though another part contains a large house. Under the committee amendment, any land directly associated with any building or enclosed structure cannot be agricultural land. It is thought that these changes will narrow the definition of agricultural and horticultural land and, in turn, the use of special value.[13]
Aside from the committee statement, specific amendments were discussed during the floor debate on the underlying legislative bill:
SENATOR RAIKES: But I do want to just offer you an example which I hope will perhaps clarify some things for you. A hypothetical example: A property owner owns an 8-acre parcel in the outlying areas of a county, next to a city or wherever it might be. Two acres of the parcel are devoted to the home site; the remaining 6 acres of the parcel are allowed to go to grassland and are baled twice a year into prairie hay. Under the current system, this landowner is able to receive the agricultural value, greenbelt value, on these 6 acres. However, the primary use of the parcel from all appearances is to serve as a home site. In these instances, it is my belief that the benefit of agricultural valuation should be extended only to those properties primarily devoted to agricultural or horticultural purposes. The bill would allow a county assessor in this situation to make a determination as to the primary use of the parcel . . . .[14]
The legislative history of the amendments to § 77-1359 shows that the Legislature intended to narrow the definition of agricultural property. And it is also clear that the addition of the term "parcel" was intended to require a county assessor to consider the entire tract of land, including any homesite, to determine whether the predominate use of the parcel was for agricultural purposes. This was the approach taken by the county assessor in these cases. Such is in contrast to the approach of the Board, which appeared to consider a homesite and the remainder of the land separately, then made a determination as to whether the remainder was being used for agricultural purposes. Indeed, it appears the Board's approach was no different than it would have been prior to the amendment.
We review TERC's decisions for errors appearing on the record.[15] And TERC has the authority to reverse the Board's decisions classifying the subject properties as agricultural and granting greenbelt status if the Board's decisions were unreasonable or arbitrary.[16] In each of these cases, the Board failed to consider the use of the entire parcel in determining whether the property was agricultural. We conclude that this failure was unreasonable and arbitrary. As such, we cannot conclude that TERC's decisions reversing the Board's decisions were in error. The arguments of the Board, Treetop, and Large to the contrary are without merit.

(c) Constitutionality of §§ 77-132 and 77-1359 [10,11] We next turn to Treetop's assertion that §§ 77-132 and 77-1359 are unconstitutionally vague and violate the uniformity requirements of Neb. Const. art. VIII, § 1. A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality.[17] The burden of establishing the unconstitutionality of a statute is on the one attacking its validity.[18]

(i) Vagueness
Treetop first contends that §§ 77-132 and 77-1359, when considered together, are vague. Under § 77-1359, agricultural land is defined as "a parcel of land which is primarily used for agricultural . . . purposes." Treetop contends that the use of the term "parcel" is vague, because the definition of that term, found in § 77-132, provides that "[i]f all or several lots in the same block are owned by the same person and are contained in the same tax district, they may be included in one parcel." Treetop contends that such does not provide adequate standards for the county assessor in determining what should be considered a parcel.
Treetop also asserts that the following language from § 77-1359 is vague: "Agricultural land and horticultural land does not include any land directly associated with any building or enclosed structure." In its brief, Treetop questions whether such language would eliminate land "under or near barns, grain silos, farm equipment storage buildings, etc.? That certainly seems to be what the statute says, but if so, it makes no sense whatsoever."[19] Though Treetop does not explain further, we believe that it is making the same argument here as with the definition of parcel: that, with respect to the meaning of this language, the relevant statutes do not provide sufficient guidance to the county assessor.
Although most decisions invoking the void-forvagueness doctrine have dealt with criminal statutes, the doctrine applies equally to civil statutes.[20] In order to survive a vagueness challenge, a statute must (1) give adequate notice to citizens, such that a person of ordinary intelligence has a reasonable opportunity to know what is prohibited or required, and (2) supply adequate standards to prevent arbitrary enforcement, such that there are explicit standards for those who apply it.[21] Another wording of the same test states that a statute must not forbid or require the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.[22] Statutes are to be evaluated under these standards using principles of flexibility and reasonable breadth.[23] To have standing to assert a claim of vagueness, a defendant must not have engaged in conduct which is clearly prohibited by the questioned statute.[24]
We conclude that Treetop lacks standing to assert vagueness in both particulars. With respect to the alleged vagueness of the definition of parcel, the property owned by Treetop clearly fits within the definition of "parcel" set forth by § 77-132. Moreover, the discretion granted to the county assessor by the last sentence of § 77-132 is not applicable to Treetop's situation. At the time the county assessor denied the property greenbelt status, the property was owned by Guenzel and his wife. There is no indication from the record that at the relevant time, there were additional lots located in the same block and tax district which were also owned by the Guenzels. Thus, with respect to this property, the county assessor would have had no discretion to consider several lots as one parcel.
Treetop also lacks standing to assert the vagueness of the language excluding from the definition of agricultural land "any land directly associated with any building or enclosed structure."[25] Even assuming that the greenhouse located on Treetop's property would fall within this exclusion, the subject property still fails to qualify as agricultural land because it has not been used for any purpose, agricultural or otherwise, since at least 2003.
Treetop's assignment of error regarding vagueness is without merit.

(ii) Uniformity
Treetop also alleges that §§ 77-132 and 77-1359, as amended, cannot be uniformly enforced. Neb. Const. art. VIII, § 1(4), provides:
[T]he Legislature may provide that agricultural land and horticultural land, as defined by the Legislature, shall constitute a separate and distinct class of property for purposes of taxation and may provide for a different method of taxing agricultural land and horticultural land which results in values that are not uniform and proportionate with all other real property and franchises but which results in values that are uniform and proportionate upon all property within the class of agricultural land and horticultural land.
Treetop's assertion regarding uniformity is also without merit. The Legislature enacted §§ 77-132 and 77-1359 in order to provide a definition for agricultural land. Neb. Const. art. VIII, § 1, allows the Legislature to so define. And the Legislature has chosen to narrow the classification of properties in such definition to exclude properties which do not meet certain standards of agricultural use when considered as a whole. The amendments as enacted are capable of being uniformly applied and, accordingly, do not violate article VIII, § 1.

(d) Testimony of Stevens
Finally, Large assigns that TERC erred in receiving the testimony of Board member Stevens. Large contends that Stevens' testimony was without foundation and irrelevant. Stevens was the sole Board member to vote against granting Large's property greenbelt status. In his testimony, Stevens explained the reasons behind his dissenting vote.
As discussed above, our resolution of the primary question presented on appealwhether the properties in question were agriculturalwas dependent upon our interpretation of the applicable statutes. And the interpretation of a statute is a question of law, which we review de novo.
Our conclusion as to the proper interpretation of these statutes, and in turn our conclusion that TERC did not err in reversing the Board's decisions, was reached without reliance upon Stevens' testimony. Thus, even assuming that the receipt of Stevens' testimony was error, we conclude that Large suffered no prejudice as a result. Large's assignment of error on this point is therefore without merit.

V. CONCLUSION
The Board has standing to appeal TERC's decisions to this court. Further, as raised in the Board's appeals and in Treetop's and Large's cross-appeals, TERC did not err in reversing the decision of the Board granting the properties at issue greenbelt status.
With respect to Treetop's cross-appeal, we conclude that Treetop lacks standing to raise a vagueness challenge to §§ 77-132 and 77-1359 and that these statutes do not violate Neb. Const. art. VIII, § 1. With respect to Large's cross-appeal, we conclude that Large was not prejudiced by any error in the admission of the testimony of Stevens.
We therefore affirm the decisions of TERC in these appeals.
Affirmed.
NOTES
[1] Darnall Ranch v. Banner Cty. Bd. of Equal., ante p. 296, 753 N.W.2d 819 (2008).
[2] Pavers, Inc. v. Board of Regents, ante p. 559, 755 N.W.2d 400 (2008).
[3] Borrenpohl v. DaBeers Properties, ante p. 426, 755 N.W.2d 39 (2008).
[4] Smith v. City of Papillion, 270 Neb. 607, 705 N.W.2d 584 (2005).
[5] City of Omaha v. City of Elkhorn, ante p. 70, 752 N.W.2d 137 (2008).
[6] See Sturzenegger v. Father Flanagan's Boys' Home, ante p. 327, 754 N.W.2d 406 (2008).
[7] § 77-1359 (Reissue 2003).
[8] § 77-1359(1) (Cum. Supp. 2006).
[9] § 77-1359(1) (Reissue 2003).
[10] § 77-132.
[11] In re Interest of Destiny A. et al., 274 Neb. 713, 742 N.W.2d 758 (2007).
[12] Id.
[13] Committee Statement, L.B. 808, Revenue Committee, 99th Leg., 2d Sess. (Feb. 2, 2006) (emphasis in original).
[14] Floor Debate, 99th Leg., 2d Sess. 11110-11 (Mar. 22, 2006).
[15] Darnall Ranch v. Banner Cty. Bd. of Equal., supra note 1.
[16] Neb. Rev. Stat. § 77-5016 (Supp. 2007).
[17] Pavers, Inc. v. Board of Regents, supra note 2.
[18] Id.
[19] Brief for appellee Treetop on cross-appeal at 7.
[20] Cunningham v. Lutjeharms, 231 Neb. 756, 437 N.W.2d 806 (1989).
[21] Teters v. Scottsbluff Public Schools, 256 Neb. 645, 592 N.W.2d 155 (1999), overruled in part on other grounds, Bronsen v. Dawes County, 272 Neb. 320, 722 N.W.2d 17 (2006).
[22] Id.
[23] Id.
[24] State v. Archie, 273 Neb. 612, 733 N.W.2d 513 (2007).
[25] § 77-1359(1).