Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/05/2024 09:07 AM CST

- 633 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
FOUNTAIN II v. DOUGLAS CTY. BD. OF EQUAL.
Cite as 315 Neb. 633

Fountain II, LLC, appellant, v. Douglas County
Board of Equalization, appellee.
___ N.W.2d ___

Filed January 5, 2024.    No. S-22-888.

1. **Taxation: Judgments: Appeal and Error.** Appellate courts review decisions rendered by the Tax Equalization and Review Commission for errors appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Taxation: Appeal and Error.** Questions of law arising during appellate review of Tax Equalization and Review Commission decisions are reviewed de novo.
4. **Administrative Law: Judgments.** Whether an agency decision conforms to the law is by definition a question of law.
5. **Statutes.** Statutory interpretation presents a question of law.
6. **Statutes: Legislature: Intent.** The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.
7. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of words which are plain, direct, and unambiguous.
8. **Statutes.** Statutes pertaining to the same subject matter should be construed together; such statutes, being in pari materia, must be construed as if they were one law and effect given to every provision.
9. **Statutes: Words and Phrases.** The general rule is that in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion.
10. **Statutes: Legislature.** It is a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time the Legislature enacted the statute.

- 634 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
FOUNTAIN II v. DOUGLAS CTY. BD. OF EQUAL.
Cite as 315 Neb. 633

11. **Appeal and Error: Words and Phrases.** Appellate courts often turn to dictionaries to ascertain a word's plain and ordinary meaning.

Appeal from the Tax Equalization and Review Commission. Reversed and remanded with directions.

Dwyer Arce, of Kutak Rock, L.L.P., for appellant.

Donald W. Kleine, Douglas County Attorney, Jennifer Chrystal-Clark, and Kinzie Randall, Senior Certified Law Student, for appellee.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

## INTRODUCTION

A commercial real estate development company and a county board of equalization dispute whether a property was eligible for special valuation as agricultural or horticultural land under Neb. Rev. Stat. §§ 77-1343 to 77-1347.01 (Reissue 2018) in tax year 2018. That particular special valuation is colloquially known as "'greenbelt status.'"[1] Nebraska's Tax Equalization and Review Commission (TERC) affirmed the decision of the county board, which denied the company's application for greenbelt status for the property. We reverse the decision of TERC and remand the cause with directions to sustain the company's protest.

## BACKGROUND

Fountain II is a wholly owned subsidiary of R&R Realty Group. Those entities are collectively referred to as "R&R" in the parties' briefs, and we adopt that usage in this opinion.

---

[1] *Agena v. Lancaster Cty. Bd. of Equal.*, 276 Neb. 851, 853, 758 N.W.2d 363, 367 (2008).

- 635 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
FOUNTAIN II v. DOUGLAS CTY. BD. OF EQUAL.
Cite as 315 Neb. 633

R&R purchased the 19.9-acre property in Douglas County, Nebraska, at issue here in 2016 with the ultimate intent of developing it. However, at the time the property was purchased and subsequently in 2017, it was farmed pursuant to a farm lease, and the acres not directly associated with buildings or structures had greenbelt status. R&R's practice was to "maintain farm leases" on its property pending development "to preserve the agricultural classification until the time [was] right to develop it."

### Disqualification From Greenbelt Status in 2017

In December 2017, the Douglas County assessor (Assessor) notified R&R that effective January 1, 2018, the property no longer qualified for greenbelt status because it was not being primarily used for agricultural or horticultural purposes. That notice was sent after a real estate specialist with the Assessor's office drove by the property and observed surveyors' stakes, "neon flags," and grading of the property that he viewed as "not consistent with agriculture."

R&R contacted the Assessor's office about the notice and spoke with the real estate specialist whose observations had led to the property's disqualification. R&R explained that it was "going to start building on [the property], but . . . ran into problems with the planning board" and was no longer planning to build at that time. The real estate specialist told R&R that R&R could either protest the disqualification to the county board or "simply file a new application. [It had] either option."

### Application for Greenbelt Status in 2018

Subsequently, in May 2018, R&R filed an application seeking greenbelt status for the property. In its application, R&R stated that the property was scheduled to be graded starting

- 636 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
FOUNTAIN II v. DOUGLAS CTY. BD. OF EQUAL.
Cite as 315 Neb. 633

on June 1 and that once the grading was completed, a farmer "will plant alfalfa. [R&R] intend[s] to lease the land annually to plant, grow & harvest alfalfa until a building is developed." Attached to the application was a copy of the farm lease, which stated that the lease was effective as of January 1, 2018.

The Assessor denied R&R's application on the ground that the property was not primarily used for agricultural or horticultural purposes. The denial came after the same real estate specialist who had previously inspected the property visited it again in late June 2018. At that time, the real estate specialist observed multiple pieces of "heavy equipment" parked on the property and about to begin grading. He viewed that type of equipment as "not consistent with agricultur[e]."

## Protest to County Board
### of Equalization

R&R protested the denial of its application for greenbelt status to the Douglas County Board of Equalization (county board). The substance of R&R's argument was that the property was entitled to greenbelt status because "[i]t will be planted in alfalfa after grading is completed; alfalfa seeding began in August pursuant to a Farm Lease dated January 1, 2018. There is no final plat on this property and the owner cannot build, can only farm, for the remainder of 2018." In support of the protest, R&R submitted an affidavit attesting that the farm lease remained in effect and that development could not proceed until 2019 at the earliest.

The Assessor countered by presenting a timeline of events occurring on or involving the property that highlighted the steps R&R had taken to develop the property. Those steps included the submission and approval of preliminary plats for development.

The county board denied R&R's protest by a vote of 3 to 2, with two members absent.

- 637 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
FOUNTAIN II v. DOUGLAS CTY. BD. OF EQUAL.
Cite as 315 Neb. 633

Appeal to TERC

R&R appealed the county board's decision to TERC. At a hearing, TERC received evidence and heard testimony from witnesses. That testimony is summarized below. Additional facts will be noted later in the opinion as they relate to the parties' arguments on appeal.

Witnesses for R&R testified that soybeans were grown on the property in 2017 pursuant to a farm lease. According to witnesses, after the soybeans were harvested, the property was "basically . . . a stubble field" at the start of 2018. R&R's witnesses also testified that in early January 2018, R&R approached the farmer who had leased the property in 2017 about a lease for 2018. The farmer agreed to R&R's proposal in late January, but the lease was not executed until April. Those timeframes were "standard" for R&R's farm leases, witnesses testified. The 2018 lease called for the farmer to plant alfalfa on the property once grading was completed, as was previously noted.

According to R&R's witnesses, alfalfa is a perennial that should be planted in April or early May or in early September. The witnesses testified that alfalfa was planted on the property in September 2018 and that the property was subsequently granted greenbelt status in tax year 2019. R&R argued that this fact was relevant to the present appeal because the "same crop" was at issue in tax years 2018 and 2019. R&R's witnesses further testified that the only revenue R&R received from the property in 2018 was rent from the farm lease; there was no commercial development. The witnesses also testified that the grading of the property in 2018 was partly to "level[] out the property to be more in line with . . . what future development might hold," but also to "spread[] topsoil, black dirt, along the top of the surface for the farmer's benefit."

The county board's sole witness was the real estate specialist who had inspected the property in December 2017 and June 2018. He testified that the property was disqualified

- 638 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
FOUNTAIN II v. DOUGLAS CTY. BD. OF EQUAL.
Cite as 315 Neb. 633

in December 2017 because "it appeared there was an actual change in the use." He also testified that as of January 1, 2018, the property differed from other properties in Douglas County that qualified for greenbelt status in 2018 because "[i]t was disqualified before December 31st. . . . It was no longer being used for ag[riculture], so it was disqualified." However, the witness acknowledged that "[n]othing was being built on the property" on January 1.

The county board's witness also testified that he visited the property multiple times in 2018, even after R&R's application for greenbelt status was denied, and that he did not observe any agricultural activity until mid-September. At that time, the witness testified, R&R "got something into the ground," although the witness questioned whether the crop planted in September 2018 was the same crop seen in photographs of the property taken in summer 2019. The witness explained that with an application for greenbelt status, the county assessor must "determine the use of the land no later than July 15th. . . . There has to be a crop there [by then] — it has to be in the ground."

After the hearing, TERC affirmed the county board's determination that the property was not eligible for greenbelt status for tax year 2018. TERC acknowledged R&R's argument that the property was not put to any use other than agricultural use in 2018. However, TERC found that "the evidence [did] not support this contention." TERC observed that there was evidence showing that alfalfa was planted in the first 2 weeks of September. However, according to TERC, this was after the January 1 "assessment date" and after the July 15 date by which the Assessor must approve or deny applications for greenbelt status. TERC further observed that prior to this fall planting, the property was not unused, as R&R claimed; rather, the work done on the property "for the majority of 2018 was to prepare it for the future construction of commercial buildings."

- 639 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
FOUNTAIN II v. DOUGLAS CTY. BD. OF EQUAL.
Cite as 315 Neb. 633

R&R appeals TERC's decision, and we moved the matter to our docket under Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

## ASSIGNMENTS OF ERROR

R&R assigns, restated, that TERC erred in (1) holding that the property did not meet the statutory qualifications for greenbelt status in 2018 as a matter of law, (2) failing to apply the canon of construction that laws imposing taxes must be strictly construed against the taxing authority and in favor of the taxpayer, (3) deferring to the county board's interpretation of the relevant statutes and regulations, (4) holding that R&R had not presented competent evidence to rebut the presumption that the county board faithfully performed its duties and had sufficient competent evidence to make its decision, (5) holding that R&R had not presented clear and convincing evidence that the county board's decision was arbitrary or unreasonable, (6) dismissing R&R's contention that the determination in this case would have wide-ranging impact on farmers holding land fallow or idle, (7) refusing to reverse the determination that the property did not qualify for greenbelt status in 2018, and (8) refusing to order the Assessor to refund excess 2018 property taxes that R&R paid under protest.

## STANDARD OF REVIEW

[1,2] Appellate courts review decisions rendered by TERC for errors appearing on the record.[2] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3] Competent evidence is evidence that is admissible and tends to establish a fact in issue.[4]

---

[2] *Lincoln Cty. Bd. of Equal. v. Western Tabor Ranch Apts.*, 314 Neb. 582, 991 N.W.2d 889 (2023).

[3] *Id.*

[4] *Cain v. Custer Cty. Bd. of Equal.*, 298 Neb. 834, 906 N.W.2d 285 (2018).

- 640 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
FOUNTAIN II v. DOUGLAS CTY. BD. OF EQUAL.
Cite as 315 Neb. 633

[3] Questions of law arising during appellate review of TERC decisions are reviewed de novo.[5]

[4,5] Whether an agency decision conforms to the law is by definition a question of law.[6] Statutory interpretation also presents a question of law.[7]

## ANALYSIS

This appeal raises questions of first impression regarding the statutes governing greenbelt status. We address those questions below, but first we review our familiar principles of statutory interpretation. We also review the statutory framework governing greenbelt status.

### Principles of Statutory Interpretation

[6-8] As we have previously explained, the fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.[8] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of words which are plain, direct, and unambiguous.[9] A statute is ambiguous if it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way.[10] Otherwise, the statute is unambiguous. Furthermore, statutes pertaining to the same subject matter should be construed together; such statutes, being in pari materia, must be construed as if they were one law and effect given to every provision.[11]

---

[5] *Western Tabor Ranch Apts., supra* note 2.

[6] *Id.*

[7] *Hernandez v. Dorantes*, 314 Neb. 905, 994 N.W.2d 46 (2023).

[8] *In re Interest of T.W.*, 314 Neb. 475, 991 N.W.2d 280 (2023).

[9] *Haynes v. Nebraska Dept. of Corr. Servs.*, 314 Neb. 771, 993 N.W.2d 97 (2023).

[10] *State v. McColery*, 301 Neb. 516, 919 N.W.2d 153 (2018).

[11] *In re Interest of T.W., supra* note 8.

- 641 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
FOUNTAIN II v. DOUGLAS CTY. BD. OF EQUAL.
Cite as 315 Neb. 633

## Statutes Governing Greenbelt Status

The statutes at issue in this case, §§ 77-1343 to 77-1347.01, were enacted in 1974[12] to address the economic effects of urban and other nonagricultural development on neighboring agricultural land.[13] The statutes protect persons engaged in agricultural endeavors from tax burdens that might otherwise force them to discontinue those endeavors by allowing them to elect special valuation for their property, rather than having their property valued according to its actual value.[14]

As is relevant to the present appeal, § 77-1344 sets forth the qualifications for greenbelt status. In particular, § 77-1344(3), now codified as § 77-1344(2), prescribes as follows:

> The eligibility of land for the special valuation provisions of this section shall be determined each year as of January 1. If the land so qualified becomes disqualified on or before December 31 of that year, it shall continue to receive the special valuation until January 1 of the year following.

The following section, § 77-1345, requires that applicants for greenbelt status under § 77-1344 apply to the county assessor "on or before June 30 of the first year in which such valuation is requested."[15] The county assessor is then required under § 77-1345.01 to approve or deny the application on or before July 15 of the same year in which the application was made and issue a notice of approval or denial on or before July 22 of that year. Once greenbelt status is granted, it lasts until the land no longer qualifies as agricultural or horticultural land or other conditions not relevant to the present appeal are met.[16]

---

[12] 1974 Neb. Laws, L.B. 359.

[13] *Burdess v. Washington Cty. Bd. of Equal.*, 298 Neb. 166, 903 N.W.2d 35 (2017).

[14] *Id*. See Neb. Rev. Stat. § 77-112 (Reissue 2018) ("[a]ctual value of real property for purposes of taxation means the market value of real property in the ordinary course of trade").

[15] § 77-1345(1).

[16] § 77-1347.

- 642 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
FOUNTAIN II v. DOUGLAS CTY. BD. OF EQUAL.
Cite as 315 Neb. 633

For purposes of these statutes, "[a]gricultural land and horticultural land" are defined in Neb. Rev. Stat. § 77-1359(1) (Reissue 2018) to mean "a parcel of land, excluding land associated with a building or enclosed structure located on the parcel, which is primarily used for agricultural or horticultural purposes." "Agricultural or horticultural purposes" are similarly defined by statute to mean "used for the commercial production of any plant or animal product in a raw or unprocessed state that is derived from the science and art of agriculture, aquaculture, or horticulture."[17] The statutes further prescribed:

> Whether a parcel of land is primarily used for agricultural or horticultural purposes shall be determined without regard to whether some or all of the parcel is platted and subdivided into separate lots or developed with improvements consisting of streets, sidewalks, curbs, gutters, sewer lines, water lines, or utility lines.[18]

### TERC Erred in Considering Property's
### Use as of July 15

In affirming the county board's decision, TERC found that alfalfa was not planted on the property until mid-September 2018. TERC observed that this date was after the January 1 "assessment date" and after the July 15 date for the county assessor to approve or deny applications for greenbelt status. On appeal, R&R argues that TERC erred by considering the property's use as of July 15. R&R observes that § 77-1344 prescribes that property's eligibility for greenbelt status "'shall be determined each year as of January 1.'"[19] The county board counters that the county assessor "must decide if a parcel of land qualifies for [greenbelt] status on January 1

---

[17]  § 77-1359(2)(a).

[18]  § 77-1359(2)(c).

[19]  Brief for appellant at 25 (quoting § 77-1344(3)).

- 643 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
FOUNTAIN II v. DOUGLAS CTY. BD. OF EQUAL.
Cite as 315 Neb. 633

or July 15" under §§ 77-1344 and 77-1345.01, respectively.[20] We agree with R&R.

[9] The county board effectively reads § 77-1345.01(1) in isolation, construing it to mean that the county assessor is to consider the property's use through July 15 because the statute grants the county assessor until July 15 to approve or deny an application for greenbelt status. However, such a reading fails to take into account the language of § 77-1344(3), which states, in relevant part, that "[t]he eligibility of land for the special valuation provisions of this section shall be determined each year as of January 1." The general rule is that in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion.[21] Hence, given this unambiguous command in § 77-1344, we find that property's eligibility for greenbelt status must be determined as of January 1, even in cases where an application for greenbelt status is filed after that date. We also observe that the January 1 date, which has been part of § 77-1344 since its enactment in 1974,[22] is consistent with the statutory requirement that "[a]ll real property in this state subject to taxation shall be assessed as of January 1 at 12:01 a.m."[23]

The regulations implementing §§ 77-1343 to 77-1347.01 take a similar view. The regulations regarding applications for greenbelt status prescribe, in relevant part, that "[i]f the land qualifies for the special valuation assessment pursuant to REG-11-003, the assessor shall approve the application."[24]

---

[20] Brief for appellee at 19.

[21] *State v. Simons, ante* p. 415, 996 N.W.2d 607 (2023).

[22] 1974 Neb. Laws, L.B. 359.

[23] Neb. Rev. Stat. § 77-1301(1) (Reissue 2018).

[24] 350 Neb. Admin. Code § 11-004.01 (2009). See, also, 350 Neb. Admin. Code § 11-004.04 (2009) (assessor to review status of applicant and "eligibility of the land pursuant to the criteria in REG-11-003.01" and approve or deny application on or before July 15). Accord 350 Neb. Admin. Code § 11-004.05 (2009).

- 644 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
FOUNTAIN II v. DOUGLAS CTY. BD. OF EQUAL.
Cite as 315 Neb. 633

The regulation cited regarding qualification for the special valuation assessment, in turn, states that in order to be eligible for greenbelt status, the land must, among other things, "be agricultural or horticultural land. Eligibility shall be determined annually as of January 1."[25] Notably, there is no mention of the July 15 date in either of those two provisions.

Accordingly, we find that TERC's decision did not conform to law insofar as it was based in part on the property's use as of July 15, 2018.

### TERC's Decision Not Supported by Competent Evidence Regarding Use as of January 1

Having determined that eligibility for greenbelt status depends upon how a property is "primarily used" as of January 1, we next consider what is meant by that term in § 77-1359(1) and what the evidence showed regarding the property's use as of January 1, 2018.

The relevant statutes do not define what is meant by the term "primarily used." However, our opinion in *Agena v. Lancaster Cty. Bd. of Equal.*[26] suggests that "'primarily'" means "predominate[ly]." The dispute in *Agena* concerned the import of the word "parcel" in § 77-1359(1)'s definition of agricultural and horticulture land to mean "a parcel of land, excluding land associated with a building or enclosed structure located on the parcel, which is primarily used for agricultural or horticultural purposes." The county assessor argued that the inclusion of the term "parcel" in that definition meant the use of the land as a whole, while the county board argued that it meant the use of a majority of the acres of a parcel.[27] We agreed with the county assessor.[28] In so doing, we discussed

---

[25] 350 Neb. Admin. Code at § 11-003.01B (2009).

[26] *Agena, supra* note 1, 276 Neb. at 862, 758 N.W.2d at 373.

[27] *Agena, supra* note 1.

[28] *Id.*

- 645 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
FOUNTAIN II v. DOUGLAS CTY. BD. OF EQUAL.
Cite as 315 Neb. 633

legislative history materials which prompted us to conclude that "the addition of the term 'parcel' was intended to require a county assessor to consider the entire tract of land, including any homesite, to determine whether the predominate use of the *parcel* was for agricultural purposes."[29] The Nebraska Court of Appeals took a similar approach in its unpublished opinion *Aloi v. Lincoln Cty. Bd. of Equal.*,[30] finding that the "incidental use" of a property for grazing was insufficient for greenbelt status.

[10,11] Those approaches to the meaning of "primarily" are consistent with the plain and ordinary meaning of that term. It is a fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time the Legislature enacted the statute.[31] Appellate courts often turn to dictionaries to ascertain a word's plain and ordinary meaning.[32] Here, the word "primarily" was added to § 77-1359(1) in 1997 in conjunction with other amendments to the definition of "[a]gricultural land and horticultural land" given there.[33] Dictionaries from that time define "primarily" to mean "essentially; mostly; chiefly; principally."[34] The regulations implementing §§ 77-1343 to 77-1347.01 take a similar approach, prescribing that "[p]rimarily used shall mean that the use of the land is mainly agricultural or horticultural."[35]

With that definition in mind, we now consider the evidence regarding the property's use as of January 1, 2018. The county board generally argues that there was no competent

---

[29] *Id*. at 862, 758 N.W.2d at 373.

[30] *Aloi v. Lincoln Cty. Bd. of Equal.*, No. A-08-059, 2008 WL 5413385 at *5 (Neb. App. Dec. 23, 2008) (selected for posting to court website).

[31] *State v. Dailey*, 314 Neb. 325, 990 N.W.2d 523 (2023).

[32] *Id*.

[33] Accord 1997 Neb. Laws, L.B. 270, § 77.

[34] See, e.g., Webster's Encyclopedic Unabridged Dictionary of the English Language 1142 (1989).

[35] 350 Neb. Admin. Code § 14-002.56 (2009).

- 646 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
315 NEBRASKA REPORTS
FOUNTAIN II v. DOUGLAS CTY. BD. OF EQUAL.
Cite as 315 Neb. 633

evidence to rebut the presumption that it faithfully performed its duties and no clear and convincing evidence that its decision denying greenbelt status was arbitrary and capricious.[36] However, that argument reflects the county board's view that the county board and TERC properly considered evidence as to the property's use as of July 15. Looking solely to the evidence of use as of January 1, the situation is different.

R&R points to testimony that on January 1, 2018, the property "appeared exactly the same as every other agricultural property in Nebraska after a fall harvest: it was 'basically like a stubble field ... at the start of 2018.'"[37] In addition, R&R observes that after the property was disqualified from greenbelt status in December 2017, R&R informed the Assessor's office that R&R was "'not, at this time, going to be building on'" the property and that it "would be 'used for agriculture[al purposes] in 2018.'"[38] R&R also observes that the property was subject to a farm lease effective January 1, the rent from which was R&R's sole revenue from the property in 2018.

The county board counters that R&R's failure to protest the property's disqualification from greenbelt status in December 2017 shows that the property "was not being used for agricultural use, but for commercial development," on January 1, 2018.[39] The county board also observes that R&R took multiple steps to develop the property starting in 2017 and

---

[36] See, e.g., *Western Tabor Ranch Apts., supra* note 2 (on appeal from county board of equalization, there is presumption that board has faithfully performed its official duties in making assessment and has acted upon sufficient competent evidence to justify its action; once competent evidence is adduced to show that board's order, decision, determination, or action is incorrect, property owner retains burden to show by clear and convincing evidence that board's decision was arbitrary or unreasonable).

[37] Brief for appellant at 25.

[38] *Id*. at 15.

[39] Brief for appellee at 20.

- 647 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
FOUNTAIN II v. DOUGLAS CTY. BD. OF EQUAL.
Cite as 315 Neb. 633

continuing into 2018, including the filing and approval of pre-
liminary plats.

Neither of the factors cited by the county board proves,
without more, that the property was not primarily used for
agricultural purposes as of January 1, 2018. The relevant
statutes separately provide for (1) protests of disqualifica-
tion from greenbelt status and (2) applications for green-
belt status, without prohibiting persons whose property has
been disqualified from subsequently filing an application for
greenbelt status without having brought a protest.[40] As such,
the Legislature contemplated that both alternatives would be
available to persons seeking to retain greenbelt status. The
county board's own witness testified similarly, stating that
when R&R contacted the Assessor's office about the disquali-
fication in December 2017, he told R&R that it could either
protest the disqualification to the county board or "simply file
a new application. [It had] either option." Likewise, there is
nothing in the relevant statutes that bars persons from seeking
approval for development, so long as the property continues
to be primarily used for agricultural or horticultural purposes.
In fact, the statutes expressly provide that whether a parcel
of land is primarily used for agricultural or horticultural pur-
poses shall be determined without regard to whether some or
all of the parcel is platted and subdivided into separate lots
or developed.[41]

Similarly to the county board, TERC observed that "[a]fter
the fall 2017 harvest[,] [R&R] removed the existing farm-
house and outbuildings" from the property. The apparent
implication of this statement is that those actions showed
that the property was being used to prepare it for develop-
ment. However, the testimony at the hearing was that R&R
removed the buildings from the property in October 2017

---

[40] §§ 77-1345.01(3) and 77-1347.01.

[41] § 77-1359(2)(c).

- 648 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
FOUNTAIN II v. DOUGLAS CTY. BD. OF EQUAL.
Cite as 315 Neb. 633

because the city of Omaha, Nebraska, informed R&R that the fact that the property was "abandoned . . . was becoming a public nuisance and activities were happening on the site that [R&R] needed to get cleaned up." At oral arguments, counsel for R&R agreed that the city had requested that the farmhouse and outbuildings be removed.

As we observed in *Agena*, TERC has the authority to reverse the county board's decisions regarding property's classification as agricultural and the grant or denial of greenbelt status if the county board's decisions are unreasonable or arbitrary.[42] A decision is arbitrary when it is made in disregard of the facts or circumstances and without some basis which would lead a reasonable person to the same conclusion.[43] The term "unreasonable" can be applied to a decision only when the evidence presented leaves no room for differences of opinion among reasonable minds.[44]

We, in turn, review TERC decisions for errors appearing on the record, an inquiry that includes whether the decision is supported by competent evidence, which is evidence that is admissible and tends to establish a fact in issue.[45]

In light of the evidence in this case regarding the property's use as of January 1, 2018, we find that the county board's decision was arbitrary and unreasonable and that TERC's decision that the property was not primarily used for agricultural purposes as of January 1 was not supported by competent evidence.

## Remaining Assignments of Error

R&R also assigns that TERC erred in various other respects. However, we need not address those assignments of error,

---

[42] *Agena, supra* note 1. See, also, Neb. Rev. Stat. § 77-5016(9) (Reissue 2018).

[43] *Acklie v. Nebraska Dept. of Rev.*, 313 Neb. 28, 982 N.W.2d 228 (2022).

[44] *Western Tabor Ranch Apts., supra* note 2.

[45] *Cain, supra* note 4.

- 649 -

Nebraska Supreme Court Advance Sheets
315 Nebraska Reports
FOUNTAIN II v. DOUGLAS CTY. BD. OF EQUAL.
Cite as 315 Neb. 633

because we conclude that TERC erred in affirming the denial of R&R's application for greenbelt status for the reasons stated above.[46]

## CONCLUSION

Because TERC erred in considering the property's use as of July 15, 2018, and because the evidence did not support TERC's determination that the property was not primarily used for agriculture as of January 1, we reverse the decision of TERC and remand the cause with directions to sustain R&R's protest.

Reversed and remanded with directions.

Miller-Lerman, J., not participating.

---

[46] *State v. Reznicek, ante* p. 272, 995 N.W.2d 204 (2023) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).